NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 16a0239n.06

Case No. 15-3597

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
May 05, 2016
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| TERESA D. GREEN, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE SOUTHERN |
| | ) | DISTRICT OF OHIO |
| CENTRAL OHIO TRANSIT AUTHORITY, | ) | |
| | ) | **OPINION** |
| Defendant-Appellee. | ) | |
| | ) | |

**BEFORE: CLAY, GIBBONS, and STRANCH; Circuit Judges.**

**JULIA SMITH GIBBONS, Circuit Judge.** Teresa Green was terminated approximately three months after filing a second charge against the Central Ohio Transit Authority (COTA) for discriminating against her on the basis of her disability. Green alleges her termination was in retaliation for filing discrimination charges, but COTA insists that she was terminated for persistently falsifying her time records. Green filed the instant claim under Title VII's anti-retaliation provision. The district court granted summary judgment in favor of COTA because Green failed to establish the causation element of a prima facie retaliation claim and even if she had, Green failed to show that COTA's proffered reason for her termination was a pretext for retaliation. Because we agree with the district court's conclusions on both causation and pretext, we affirm summary judgment in favor of COTA.

I.

Green is an African American woman with a chronic lung condition. She worked for COTA from 1992 until her termination on September 8, 2011. While working for COTA, Green was required to record the hours she worked using an electronic timekeeping system. In September 2010, she was transferred to a new facility where she worked as a Facilities Coordinator and was supervised by Jon Hancock, the location's Facilities Manager. After her transfer, she was required to continue her duties as Facilities Coordinator while additionally taking on receptionist duties. Hancock recognized the difficulties with handling both positions and notified Tim Smith, the Director of Facilities, about the issue. Shortly after Green began work at the new facility, Hancock sent her an email about her attendance problems, requesting that she speak with him about any prior arrangements regarding her attendance so they could "come to an understanding." Letter from Hancock to Smith, Sept. 27, 2010, ECF No. 40-22.

In January 2011, the relationship between Green and Hancock began to deteriorate after Hancock wrote her a performance review with an overall score indicating that she "meets and sometime[s] exceeds expectations," which Green perceived to be negative. 2010 Performance Management Form 1, 10, ECF No. 42-6. Green responded to Hancock's evaluations with comments but alleged that video evidence indicates that Hancock unlocked Green's desk drawers and removed the evaluation with her commentary without her permission. COTA's Human Resources department stepped in to attempt to resolve their problems, but a short time later, on February 10, 2011, Green filed charges with the Ohio Civil Rights Commission (OCRC) and the Equal Employment Opportunity Commission (EEOC) alleging racial and disability discrimination and retaliation.

In May 2011, Hancock took a leave of absence under the FMLA around the same time that he violated COTA's policies by giving information to a potential vendor during the bidding process. While Hancock was on leave, Vince Zeno, another Facilities Manager, covered his duties. Zeno noticed at least one occasion when Green's timecard was inaccurate and approached her about not being at the reception desk when visitors arrived. Around June 7, 2011, Green filed another OCRC and EEOC charge alleging disability discrimination and retaliation for the February 10, 2011, charge.

Afterwards, in August 2011, COTA offered to transfer Green to a new facility; she agreed and withdrew her June OCRC and EEOC charges. That month, anonymous employees sent complaints to COTA's hotline about Zeno's treatment of Green.

Shortly after Green's transfer, COTA's legal counsel, Aaron Tompkins, approached Tim Smith, the new location's Facilities Manager, stating that two anonymous supervisors had told him that Green was often late and rarely at her desk. Tompkins noted in a memorandum that on August 10, 2011, at Smith's request, he began an investigation into Green's timecards, access badge swipes, and security footage. His investigation ultimately revealed that, during the investigatory period from January to July 2011, Green arrived late more than 60 times for a total of 21 hours and 2 minutes.[1] On August 22, 2011, Hancock returned to work from FMLA leave and received a final warning for a "continual pattern of inappropriate comments and unprofessional behavior." Hancock's Decision on Discipline—Final Warning 1, ECF No. 37-5. This warning letter referenced a pending OCRC charge and noted that if it was found to be valid, it could affect his employment status. Smith testified that on August 24, 2011, Tompkins first

---

[1] The amount of time Green arrived late appears to be based on the assumption that her start time was at 7:00am. However, the evidence indicates that Hancock agreed to let Green begin work at 7:15am, and COTA agrees. Thus, it appears that Green was not late as often as the report suggested. However, as will be discussed below, any errors in COTA's termination decision are not necessarily fatal to its defense.

met with him, Kristen Treadway (the Vice President of Human Resources), and Shirley Graham (the Director of Human Resources) to discuss the results of the investigation.

Smith testified that on August 30, 2011, he, Tompkins, Treadway, and Graham met to discuss possible disciplinary measures. While they initially decided that Green should be suspended for three days, Smith testified that he ultimately decided to fire Green because allowing so many timecard violations would "set a bad precedent" and he had "zero tolerance" for theft. Smith Aff. 2, ECF No. 39-32; Smith Dep. 208:17–209:14, ECF No. 39-1. Treadway, Graham, W. Curtis Stitt (the Chief Executive Officer), and Marion White (the Chief Financial Officer) all agreed to the termination at a meeting on September 7, 2011. Green was terminated on September 8, 2011, for falsification of her timecards. Green then filed another charge with the OCRC and EEOC; the EEOC sent her a right-to-sue letter in October 2012. She filed the instant action in January 2013. Several of her claims were dismissed and the sole remaining claim is for retaliatory discharge.

The district court granted summary judgment in COTA's favor. Because COTA conceded the first three elements of Green's prima facie case were met, the district court first addressed the fourth element of causation and concluded that that element was not met. The district court reasoned that to accept Green's theory of a causal connection, it would have to ignore the fact that the investigation began prior to Hancock's return from leave, Hancock did not learn of the charges until he returned from leave, and he did not find out about the investigation until after Green was terminated. Though finding that Green failed to establish a prima facie case, the district court went on to address whether Green presented sufficient evidence that COTA's non-discriminatory reason for terminating Green was pretextual,

determining that she did not because she failed to submit evidence disputing COTA's evidence that Green habitually arrived to work late and/or left early.

## II.

We review a district court's grant of summary judgment *de novo* and its factual findings for clear error. *Keck v. Graham Hotel Sys., Inc.*, 566 F.3d 634, 636 (6th Cir. 2009). The movant is entitled to summary judgment where the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We must view all facts and reasonable inferences drawn therefrom in the light most favorable to the non-moving party. *Mosholder v. Barnhardt*, 679 F.3d 443, 449 (6th Cir. 2012). If the movant—COTA—satisfies its burden by establishing the absence of evidence to support the non-moving party's—Green's—case, the burden then shifts to Green to "designate specific facts showing that there [is] a genuine issue for trial." *Peterson v. Johnson*, 714 F.3d 905, 910 (6th Cir. 2013) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Green cannot carry this burden by relying on mere "[c]onclusory assertions, supported only by [her] own opinions." *Arendale v. City of Memphis*, 519 F.3d 587, 605 (6th Cir. 2008). Reliance on "the mere existence of a scintilla of evidence" or "some metaphysical doubt as to the material facts" is insufficient for the court to deny COTA's motion for summary judgment. *Sierra Club v. ICG Hazard, LLC*, 781 F.3d 281, 284 (6th Cir. 2015) (quoting *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 389 (6th Cir. 2008)). Rather, Green must show sufficient probative evidence, based "on more than mere speculation, conjecture, or fantasy," that would enable a jury to find in her favor. *Arendale*, 519 F.3d at 601 (quoting *Lewis v. Philip Morris, Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)). It is the function of the jury, not the court, to make credibility determinations, so while the "prospect of challenging a witness['s] credibility is not alone enough to avoid summary judgment," if Green presents specific facts calling into question COTA's witnesses, we will not

grant summary judgment in COTA's favor. *Goodwin v. City of Painesville*, 781 F.3d 314, 323 (6th Cir. 2015) (alteration in original) (citation omitted); *Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497, 503 (6th Cir. 2014).

III.

Green argues that Smith, Hancock, and Zeno "were each involved in [Green's] problems and contributed to them greatly," yet the district court "basically took the easy way out without looking at the credibility factor when weighing the deposition transcript testimony." R. at 20, Appellant Br. at 24–25. She insists that Hancock's testimony that he had not spoken to Smith or Zeno about the investigation is false and that Hancock's "underhanded discriminatory and malicious verbal statements" to her were "a precursor to her termination based upon his receipt of the final warning letter." *Id.* at 16, 25. Green also contends that the fact that Tompkins met with management to discuss her termination only two days after Hancock returned from leave and that she was fired a mere seventeen days after Hancock returned establishes causation.[2]

Green brings this claim under Title VII's retaliation provision, alleging that she was discharged after repeatedly complaining about racial harassment. Title VII's anti-retaliation provision prohibits employers from discriminating against an employee because the employee opposed a practice forbidden by Title VII or made a charge in a Title VII proceeding. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59 (2006) (quoting 42 U.S.C. § 2000e-3(a)). Green has produced only circumstantial evidence of discrimination, so we will apply the *McDonnell Douglas* framework to her claim. *Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769,

---

[2] Green also avers that Zeno and Hancock must have been the two supervisors to report her because of the animosity they held towards her and argues, without citation to legal authority, that the fact that COTA refuses to divulge their names evinces causation. Though Green faults COTA for not turning over the names of the supervisors who reported her, the district court record reflects, and Green does not contest, that Green did not attempt to depose Tompkins, a person at COTA who could be aware of these names. Thus, Green improperly attempts to place the burden on COTA to produce evidence to support her claim.

775–76 (6th Cir. 2016). To establish a prima facie case of retaliation, Green must demonstrate that (1) she engaged in a protected activity; (2) COTA was aware that she engaged in a protected activity; (3) COTA took an adverse employment action against Green after she engaged in that protected activity; and (4) there is a causal connection between the protected activity and the adverse action. *Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 649 (6th Cir. 2015). If she meets her prima facie case, the burden will shift to COTA to prove a legitimate, non-discriminatory reason for her termination. *Laster v. City of Kalamazoo*, 746 F.3d 714, 730 (6th Cir. 2014). If COTA can establish such a reason, the burden shifts back to Green to establish that COTA's proferred reason was merely pretextual. *Id.* Throughout this process, the burden of persuasion remains with Green. *Id.*

We will begin our analysis with the element of causation because COTA concedes that the first three elements of the prima facie case have been established.

To establish causation, Green must present "proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Yazdian*, 793 F.3d at 649 (quoting *Univ. of Tx. Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2533 (2013)). Causation can be established by indicia of retaliatory conduct, such as evidence that the plaintiff was treated differently than similarly situated employees who did not engage in protected activity or evidence that the plaintiff was subjected to closer disciplinary scrutiny after engaging in protected activity. *Evans v. Prospect Airport Servs., Inc.*, 286 F. App'x 889, 895 (6th Cir. 2008) (citing *Little v. BP Exploration & Oil Co.*, 265 F.3d 357, 364–65 (6th Cir. 2001); *Moore v. KUKA Welding Sys. & Robot Corp.*, 171 F.3d 1073, 1080 (6th Cir. 1999)).

The temporal proximity between the employee's engagement in protected conduct and the adverse employment action also plays a role in the causation analysis, though our circuit's

case law is inconsistent on whether temporal proximity standing alone is sufficient establish causation. *See Evans*, 286 F. App'x at 895; *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008). Nevertheless, an "intervening legitimate reason" to take an adverse employment action will "dispel[] an inference of retaliation based on temporal proximity." *Khun v. Washtenaw Cty.*, 709 F.3d 612, 628 (6th Cir. 2013) (quoting *Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 472 (6th Cir. 2012)). In *Wasek* for example, after the plaintiff was sexually harassed by a co-worker and repeatedly complained to management to no avail, he decided to leave his job site, which created difficulty for his employer because the plaintiff's crew was 600 miles away from the main office, making it difficult to bring in a replacement. 682 F.3d at 465– 66. Thereafter, the employer engaged in a materially adverse employment action by banning him from returning to work with the crew. *Id.* at 466–67, 470. The court determined that the plaintiff's departure from the job site provided the employer "an intervening legitimate reason to discipline him," which allayed any inference of retaliation based on the temporal proximity between his protected activity and the adverse employment action. *Id.* at 472.

Green appears to argue that she was subjected to closer scrutiny after engaging in a protected activity, seemingly based on her allegations that Hancock and Zeno initiated an investigation into Green's time records, which ultimately led to her termination in retaliation for her filing of OCRC and EEOC charges. However, this allegation is based on pure speculation. Green points to no facts, just her own subjective belief, that Hancock or Zeno were involved in the timecard investigation, or that it was initiated in response to her protected activity. Indeed, in her deposition, she even admits that she has no facts in support of this belief. In fact, the evidence in the record contradicts Green's speculation. Tompkins, who Green does not allege holds discriminatory animus towards her, was the one that initiated the investigation, at Smith's

direction, after two supervisors notified Tompkins of the issue. Hancock testified that he had no knowledge of the OCRC and EEOC charges until he received his final warning notifying him of such on August 22, 2011, nearly two weeks after the investigation began, and did not find out about the investigation until after Green was terminated. Even assuming that Hancock and Zeno were the supervisors who reported Green's attendance issues to Tompkins, the evidence reveals that the decision to terminate Green was reasonably taken after careful consideration and deliberation by neutral decision makers. *See Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530–31 (6th Cir. 2012) (emphasizing the importance of "the nature of [the employer's] investigation and disciplinary decision process" in determining whether the employer held an "honest belief" in the non-discriminatory basis for its employment decision). Smith and other members of management, also against whom Green makes no allegations of discriminatory animus, met twice to discuss Green's timecard violations before unanimously agreeing to terminate her. The testimony in the record indicates that Green's retaliation charges were not discussed at this meeting. Moreover, while Green faults the district court for failing to weigh the credibility of this testimony, she points to no specific facts, simply her own speculation, to support her allegation that the testimony indicating that her civil rights claims played no role in the decision to terminate her was fabricated. This is not sufficient to avoid summary judgment. *See Goodwin*, 781 F.3d at 323; *Sierra Club*, 781 F.3d at 284.

Green also relies on the temporal proximity between Hancock's discovery of her OCRC charge on August 22, 2011, the August 24, 2011 meeting discussing her timecard violations, and her termination on September 8, 2011. However, the evidence, specifically Tompkins's memorandum regarding the investigation, reveals that the investigation began on August 10, 2011, twelve days *before* Hancock learned of Green's complaint. Thus, Hancock's discovery of

Green's OCRC charges cannot be said to have caused the adverse employment action. Even if Hancock discovered the charges prior to the initiation of the timecard investigation, Green's falsification of her time records constitutes an intervening legitimate reason for the adverse employment action, thus dispelling any inference of retaliation based on the temporal proximity between her filing of the June OCRC and EEOC charges and her termination three months later. *See Wasek*, 682 F.3d at 472.[3]

There is simply insufficient evidence on the record from which we can infer that Green's termination would not have occurred absent any alleged retaliation for her OCRC and EEOC charges.

## IV.

COTA has presented a legitimate non-discriminatory rationale for Green's termination— her falsification of time records. Though Green forfeited any argument that this rationale is pretextual because she does not argue it in her initial brief on appeal, and only makes a conclusory reference to pretext in her reply brief, *see Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010), she cannot demonstrate pretext.

---

[3] Green also argues that whether she stole time is a genuine issue of material fact. She insists that the "timecards/payroll records generated by the payroll system/department are for the most part illegible, incomplete and do not demonstrate much except the amount of hours [Green] got paid for," R. at 20, Appellant Br. at 22, and points to several alleged errors in COTA's data. Green concludes that it is this court's duty to decipher the records. She is incorrect. First, she did not raise this issue before the district court. There, she simply argued that COTA failed to investigate whether Green made up her missed time and that she was denied a hearing or opportunity to refute the evidence from the investigation. As we generally do not review issues that have not been presented before the district court, Green has forfeited this argument. *Fed. Trade Comm'n v. E.M.A. Nationwide, Inc.*, 767 F.3d 611, 630 (6th Cir. 2014). Moreover, Title VII retaliation claims are not the appropriate means through which one challenges the accuracy of the reasons for one's termination. *Tingle*, 692 F.3d at 530. Instead, we look to "whether the employer made a reasonably informed and considered decision before taking the complained-of action," so Green must not only establish that COTA's stated reasons are false, but also "that retaliation was the real reason for the adverse action." *Id.* at 530–31 (quoting *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 598–99 (6th Cir. 2007) (internal quotation marks omitted)). As will be discussed in further detail below, Green has failed to make this showing. For this reason, we also reject Green's argument that the images on the security footage Tompkins reviewed did not "definitively" identify her.

In this circuit, pretext can be established in three interrelated ways. Green can demonstrate "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate [COTA's] action, or (3) that they were insufficient to motivate [COTA's] action." *Tingle*, 692 F.3d at 530 (quoting *Romans v. Mich. Dep't of Human Servs.*, 668 F.3d 826, 839 (6th Cir. 2012)). Green can demonstrate pretext by challenging the reasonableness of COTA's decision to terminate her, "to the extent that such an inquiry sheds light on whether [COTA's] proffered reason for the employment action was its actual motivation." *Risch v. Royal Oak Police Dep't*, 581 F.3d 383, 391 (6th Cir. 2009) (quoting *White*, 533 F.3d at 393). Nevertheless, "[w]hen an employer reasonably and honestly relies on particularized facts in making an employment decision, it is entitled to summary judgment on pretext even if its conclusion is later shown to be 'mistaken, foolish, trivial, or baseless.'" *Chen v. Dow Chem. Co.*, 580 F.3d 394, 401 (6th Cir. 2009) (quoting *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 713–15 (6th Cir. 2007)).

Green cannot establish that the reasons for her termination had no basis in fact. Although, as discussed *supra* note 1, the termination decision may have been based at least in part on erroneous calculations, there is no indication that the ultimate decision to terminate Green was not based on a reasonable and honest belief that Green falsified her timecards, particularly in light of the fact that the person who investigated the violations and four of the members of management who agreed with the termination decision are not alleged to harbor any retaliatory animus towards Green. For this reason, and as discussed above, there is no evidence to establish that the proffered reasons for terminating Green were not the actual reasons for the termination decision. Finally, the undisputed evidence indicates that COTA had no tolerance for extensive theft of time, and Green fails to point to any evidence, such as similarly situated

employees with analogous violations who were not terminated, that such a violation was insufficient to motivate her termination.

Thus, the evidence is insufficient to conclude that COTA's reasons for terminating Green were pretextual.

V.

Because Green fails to establish the prima facie element of causation, and also fails to establish pretext, we affirm summary judgment in favor of COTA.