**NOT RECOMMENDED FOR PUBLICATION**
File Name: 20a0645n.06

No. 20-3134

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| RONALD M. LISAN, M.D., | ) | **FILED** |
| | ) | Nov 12, 2020 |
| Plaintiff-Appellant, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | |
| | ) | ON APPEAL FROM THE |
| ROBERT WILKIE, Secretary of the United States | ) | UNITED STATES DISTRICT |
| Department of Veterans Affairs | ) | COURT FOR THE |
| | ) | NORTHERN DISTRICT OF |
| Defendant-Appellee. | ) | OHIO |
| | ) | |

**BEFORE: COLE, Chief Judge; DONALD and READLER, Circuit Judges.**

**CHAD A. READLER, Circuit Judge.** Upon returning to work at a Veterans Affairs medical facility following treatment for obsessive-compulsive disorder, Dr. Ronald Lisan accused the VA of discriminating against him in various respects. The complaints went the other way too, with Lisan's co-workers alleging that he engaged in sexual harassment and "no-contact" violations. Upon receiving an unpaid suspension, Lisan filed this Title VII retaliation suit against the VA. The district court granted summary judgment to the VA. We now affirm.

## BACKGROUND

Dr. Lisan is a staff anesthesiologist at the Cleveland Veterans Affairs Medical Center. Dr. Susan Raphaely is the Service Chief of Anesthesiology, and Lisan's direct supervisor. After ten years of employment with the VA, Lisan was diagnosed with obsessive-compulsive disorder, causing him to take medical leave to seek treatment. Lisan returned to work approximately three

months later. Although he felt comfortable performing most of his job duties upon his return, he informed Raphaely that he would need "some time to slowly get back into taking" his turn for being on-call at the Medical Center. On-call duties, however, were an essential function for an anesthesiologist, meaning Lisan was required to submit a formal application for a reasonable accommodation. Lisan submitted his application along with a one-sentence letter from his social worker to Bruce Kafer, the Medical Center's Reasonable Accommodation Coordinator. When Kafer denied the request due to insufficient medical documentation, Lisan supplemented his application with additional documentation. Kafer again denied Lisan's request, and Lisan continued a normal on-call rotation.

Around the same time, Lisan's attorney sent a letter to the VA accusing Raphaely of failing to provide reasonable accommodations for Lisan's on-call shifts as well as engaging in discrimination and harassment. Three days after the VA received Lisan's letter, Certified Registered Nurse Anesthetists (CRNAs) began reporting to Raphaely instances of sexual harassment by Lisan. Over the course of a month, four CRNAs documented complaints. Raphaely notified the VA's Equal Employment Office (EEO), who reported the allegation to the Medical Center Director. Raphaely also submitted to the EEO the CRNAs "report of contact" forms documenting their complaints. In addition, in accordance with the Medical Center's sexual harassment policy, Raphaely provided sexual harassment allegation checklists to the alleged victims and Lisan. Included in the checklists provided to Lisan was a no-contact order, which "ordered [Lisan] to cease any contact with the [complaining CRNAs] except that which is absolutely required for official business."

Kafer and the EEO began investigating the allegations against Lisan. While the investigation was pending, the CRNAs reported that Lisan continued to harass them. In one

instance, a CRNA alleged that Lisan entered her operating room (to which he was not assigned) to discuss their relationship and the sexual harassment allegations. While the facts of the encounter are disputed, it is clear that Lisan's communication with the CRNA violated the no-contact order and that the CRNA appeared frightened. Working with the human resources department, Raphaely drafted a warning letter reminding Lisan not to discuss the allegations or contact the CRNAs, explaining that such conduct was in direct violation of the no-contact orders. The letter further advised Lisan that he may be disciplined for the violations that already took place.

Upon completing their investigation, Kafer and the EEO concluded that Lisan's behavior did not rise to the level of sexual harassment as defined in the Medical Center's sexual harassment policy. The report, however, did conclude that "sexually inappropriate behavior was occurring," and that Lisan violated direct orders not to contact the CRNAs. Responding to the report, Raphaely, again working with human resources, sent a letter to Lisan and the Medical Center Director recommending a ten-day suspension. Disputing that recommendation, Lisan submitted a written response and made an oral reply to the Medical Center Director. Taking all of this information into consideration, the Medical Center Director upheld the ten-day suspension.

While the VA's internal proceedings were ongoing, Lisan filed a complaint in the district court asserting claims against the VA under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e–2000e-17, and the Rehabilitation Act of 1973, 29 U.S.C. § 791. After abandoning certain claims, Lisan proceeded with his Title VII claim that the VA impermissibly retaliated against him by suspending him due to his request for an accommodation and his ensuing complaints. At the close of discovery, the district court granted the VA's motion for summary judgment. *Lisan v. Wilkie*, No. 1:18cv969, 2020 WL 109066, at *1 (N.D. Ohio Jan. 9, 2020). It held that Lisan failed to set forth a prima facie case for retaliation, and, further, that he likewise failed to demonstrate that the

VA's legitimate, non-discriminatory reason for suspending him was pretextual. *Id.* at *16, *20. This timely appeal followed.

## TITLE VII RETALIATION

We review the district court's grant of summary judgment de novo. *Kenney v. Aspen Tech., Inc.*, 965 F.3d 443, 447 (6th Cir. 2020). Summary judgment is appropriate when there is no genuine dispute of material fact, and where the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). With all reasonable inferences drawn in favor of the non-moving party, the moving party bears the initial burden of showing "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). If the moving party does so, the non-moving party must then produce evidence demonstrating there is a genuine dispute of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In the Title VII context, the district court, in considering a motion for summary judgment will consider whether there is sufficient evidence to create a genuine dispute of fact at each stage of the *McDonnell Douglas* inquiry. *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 812 (6th Cir. 2011) (quoting *Cline v. Catholic Diocese of Toledo*, 206 F.3d 651, 661 (6th Cir. 2000)).

*Prima Facie Case*. Lisan alleges the VA violated Title VII by retaliating against him in response to his letter to the VA accusing Raphaely of both failing to provide Lisan reasonable accommodations as to his on-call shifts and engaging in various other forms of discrimination. *See* 42 U.S.C. § 2000e-3(a). On appeal, Lisan relies on circumstantial evidence to attempt to prove his Title VII retaliation claim. *See Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 543–44 (6th Cir. 2008). We thus consider his claim under the familiar *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973). Under that framework, Lisan has the initial burden of establishing a prima facie case of retaliation. He can

do so by showing that: (1) he engaged in activity protected under Title VII; (2) the VA knew that Lisan engaged in this protected activity; (3) the VA subsequently took an adverse employment action against Lisan; and (4) Lisan's protected activity was the but-for cause of the adverse employment action. *See Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 468–69 (6th Cir. 2012); *Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003). If Lisan establishes his prima facie case, the burden shifts to the VA to provide a "legitimate, nondiscriminatory reason" for its action. *McDonnell Douglas Corp.*, 411 U.S. at 802. Should the VA do so, the burden shifts back to Lisan to prove by a preponderance of the evidence that the VA's proffered reason was mere pretext, which is most commonly done by demonstrating that the proffered reason (1) had no basis in fact; (2) did not actually motivate the adverse action; or (3) was insufficient to motivate the adverse action. *Abbott*, 348 F.3d at 542.

The parties agree that Lisan satisfied the first three elements of the prima facie case. One, Lisan engaged in the protected activities of requesting a reasonable accommodation and sending a letter to the VA alleging discrimination and harassment. Two, the VA knew Lisan engaged in these activities. And three, Lisan's ten-day suspension constituted an adverse action. On this third element, Lisan faults the district court for failing to consider other adverse actions he incurred. But the district court faulted Lisan for failing to argue that any action other than his suspension constituted an "adverse employment action." *See Brown v. VHS of Mich., Inc.*, 545 F. App'x 368, 372 (6th Cir. 2013) (citing *Hicks v. Concorde Career Coll.*, 449 F. App'x 484, 487 (6th Cir. 2011)) (holding the failure to address a claim in either the response to a summary judgment motion or in briefs at the pleading stage can amount to waiver). Seeing no reason to disturb that ruling, we limit our review to Lisan's claim that his suspension was issued in retaliation for his protected activities.

1. Lisan's claim thus turns on the final element—causation. He must show that his suspension resulted from his accommodation request or in response to his letter accusing Raphaely of engaging in various forms of mistreatment. *See Mys v. Mich. Dep't of State Police*, 886 F.3d 591, 600 (6th Cir. 2018) (explaining the causation element requires proof that the "unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer" (quoting *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013))). Relevant here is the temporal proximity between Lisan's protected activity and the adverse employment action. Temporal proximity may raise an inference of retaliation. *See Lindsay v. Yates*, 578 F.3d 407, 418–20 (6th Cir. 2009) (collecting cases). But standing alone, temporal proximity generally is insufficient to establish causation. *See, e.g.*, *Green v. Cent. Ohio Transit Auth.*, 647 F. App'x 555, 560 (6th Cir. 2016); *Tuttle v. Metro. Gov't of Nashville*, 474 F.3d 307, 321 (6th Cir. 2007).

Lisan argues that the temporal proximity between his letter and his resulting suspension permits an inference of retaliation. Lisan requested reasonable accommodations and sent his subsequent letter alleging discrimination to the VA in late December and early January, respectively. In March, Raphaely recommended that Lisan be suspended, a recommendation later accepted by the Medical Director, with the suspension beginning in July. That proximity bears consideration in assessing whether Lisan has shown causation between his complaint and his suspension. But standing alone, that evidence typically will not suffice to establish causation. *See Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516, 525 (6th Cir. 2008) (noting that when time elapses between the protected activity and a subsequent adverse employment action, additional evidence must be coupled with temporal proximity to establish causality). Attempting to fill that void, Lisan points to testimony of the Chief CRNA explaining that Raphaely expressed her intent to have Lisan

"out of her department." Yet as the district court determined, this testimony did not tie Raphaely's stated intent to remove Lisan to Lisan's reasonable accommodation request and/or his letter, as opposed to his documented violations of the no-contact order, among other transgressions.

Those violations, moreover, constitute an intervening cause between Lisan's protected activity and the adverse employment action—one that dispels any inference of causation. *Kenney*, 965 F.3d at 450 (citing *Kuhn v. Washetenaw County*, 709 F.3d 612, 628 (6th Cir. 2013)). An "intervening legitimate reason" between the protected activity and the adverse employment action undermines any suggestion of retaliation based on temporal proximity. *See, e.g.*, *Kenney*, 965 F.3d at 450; *Wasek*, 682 F.3d at 472; *Kuhn*, 709 F.3d at 628. Here, the undisputed evidence reveals that Lisan was prohibited from contacting the complaining CRNAs (save for matters of required official business) pursuant to the Medical Center Policy. Yet Lisan repeatedly violated that command, most notably when he entered an operating room and spoke with one of the CRNAs in an effort to dispel her sexual harassment complaint against him.

True, the no-contact orders were issued—and the violations occurred—before Lisan received a letter from Raphaely citing Lisan's no-contact violations and warning him against further violations. And equally true, no violations occurred thereafter. To Lisan's mind, the warning letter itself constituted a disciplinary action for his no-contact violations, meaning his subsequent suspension had to have been for a separate, prohibited purpose, namely, his complaints to the VA. That argument misconstrues the VA's actions. Raphaely issued Lisan the sexual harassment checklists—which ordered Lisan to "cease any contact" with the CRNAs—in accordance with Medical Center Policy. Following reports that Lisan violated that order, Raphaely issued the warning letter, which reiterated that Lisan must cease all contact with the CRNAs and that his alleged no-contact violations would be fully investigated, leaving open the possibility of

disciplinary measures. The letter further stated that no disciplinary action would be imposed at that time, confirming that the letter itself did not constitute a disciplinary action. Lisan's violations of the no-contact orders thus constituted legitimate intervening reasons for his suspension, dispelling any inference of retaliation. He therefore fails to meet his burden to establish a prima facie case of retaliation.

*Non-Discriminatory Reason And Pretext.* Even if Lisan established a prima facie case of retaliation, the VA articulated a legitimate, non-discriminatory reason for his ten-day suspension. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (explaining that *McDonnell Douglas*'s second step requires an employer to offer some non-discriminatory reason for its actions). Insubordination can be one such reason. *See Fullen v. City of Columbus*, 514 F. App'x 601, 606 (6th Cir. 2013) (noting the failure to follow direct orders can constitute insubordination and establish a non-discriminatory reason for an adverse employment action); *Russell v. Univ. of Toledo*, 537 F.3d 596, 604–05 (6th Cir. 2008) (finding the plaintiff's insubordination to be a non-discriminatory reason justifying her discharge). The VA's letter articulated three reasons justifying the recommended suspension: (1) failure to follow orders; (2) inappropriate conduct; and (3) disruptive behavior putting patient safety at risk. As to the first reason, as explained in the letter, Lisan received clear orders to cease all contact with the CRNAs save for that required for official business, yet blatantly violated those orders. As to the second, while Lisan's behavior did not rise to the level of sexual harassment as defined in the Medical Center Policy, the investigation did reveal inappropriate behavior—behavior that continued even after Lisan received numerous orders to cease contact. And as to the third, this disruptive behavior ultimately jeopardized patient care. All of this fairly establishes a non-discriminatory reason for Lisan's suspension. The Medical Center Director, moreover, reaffirmed these bases in her letter

finalizing Lisan's suspension. The VA therefore articulated a legitimate, non-discriminatory reason for suspending Lisan for ten days without pay.

Under *McDonnell Douglas*, the burden thus shifts back to Lisan to demonstrate that the VA's non-discriminatory reason was pretextual. *McDonnell Douglas Corp.*, 411 U.S. at 804–05; *Crabtree v. Sec'y, U.S. Dep't of Homeland Sec.*, 611 F. App'x 256, 259 (6th Cir. 2015). Lisan can do so, for example, by showing that the VA's proffered reason: "(1) has no basis in fact; (2) was not its actual motivation; or (3) was insufficient to explain or motivate its action." *Martinez v. Cracker Barrel Old Country Store, Inc.*, 703 F.3d 911, 915 (6th Cir. 2013) (quoting *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000)); *see also Imwalle*, 515 F.3d at 545; *Abbott*, 348 F.3d at 542. Lisan retains the ultimate burden of persuasion to prove by a preponderance of the evidence that the proffered reason was not the true reason for the employment decision. *Reeves*, 530 U.S. at 143 (noting the presumption of discrimination "drops out of the picture" once the defendant proffers its non-discriminatory reason (citation omitted)). In other words, Lisan must prove not only that the proffered non-discriminatory reason for the adverse employment action was pretext, but also that the real reason for the employer's action was intentional retaliation. *Imwalle*, 515 F.3d at 544.

1. As a starting point, Lisan fails to show that the VA's proffered reason for suspending him has no basis in fact. To demonstrate pretext in that manner, Lisan must show that the VA "did not actually have cause to take adverse action against [him] based on its proffered reason." *Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 285 (6th Cir. 2012) (quoting *Joostberns v. United Parcel Servs., Inc.*, 166 F. App'x 783, 791 (6th Cir. 2006)). In its five-page letter, the VA identified specific instances in which Lisan intentionally violated the no-contact order, and it recommended that Lisan be suspended for that reason, for engaging in inappropriate conduct, and

for risking patient safety. Attempting to refute those allegations, Lisan notes that as to one specific instance in which he entered an operating room and violated the no-contact order, the contact was initiated by a CRNA, and that this contact was "absolutely required for official business." But who initiated the contact does not change the fact that Lisan was ordered to refrain from all contact with the CRNAs save for very narrow official circumstances. And, as the district court noted, contacting the CRNA to attempt to resolve her sexual harassment allegations, suffice it to say, was not required official business.

2. Nor has Lisan shown that the VA's actual reason or motivation for his suspension was for a reason other than his violation of the no-contact orders. True, as Lisan notes, an employer's shifting rationales for its adverse employment action can be evidence that the proffered rationale may not have been the employer's true motivation. *See Cicero v. Borg-Warner Auto., Inc.*, 280 F.3d 579, 592 (6th Cir. 2002) ("An employer's changing rationale for making an adverse employment decision can be evidence of pretext." (quoting *Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1167 (6th Cir. 1996))). Yet the VA's explanation for Lisan's suspension did not change over time. The VA informed Lisan that he could not contact the CNRAs. When he did, Raphaely sent him a letter reiterating that he must immediately cease all contact with the CRNAs and that his alleged violations would be fully investigated. Lisan was later suspended for these violations and related reasons. *Cf. Miles v. S. Cent. Hum. Res. Agency, Inc.*, 946 F.3d 883, 891 (6th Cir. 2020) (quoting *MacDonald-Bass v. J.E. Johnson Contracting, Inc.*, 493 F. App'x 718, 726 (6th Cir. 2012)) (noting that when an employer provides additional, non-discriminatory reasons for taking adverse employment action it does not constitute shifting justifications). The VA's proffered reasons for suspension, in short, all arise from Lisan's violation of the no-contact orders. There was no inconsistency in its articulated reasons.

Lisan says another factor allegedly influenced his suspension, namely, an internal VA "climate assessment" report that raised concerns that Raphaely had facilitated a hostile workplace environment. Based on that report, Lisan says the CRNAs feared retaliation from Raphaely, allowing her to solicit them into submitting false allegations against Lisan, and to direct them on how to answer the sexual harassment questionnaire. But even accepting these assertions as true, it does not create a material dispute over the fact that Lisan intentionally violated the no-contact orders. *See Brennan v. Tractor Supply Co.*, 237 F. App'x 9, 19–20 (6th Cir. 2007) ("Mere conjecture that the employer's explanation is pretext for intentional discrimination is an insufficient basis for denial of summary judgment. A court may not reject an employer's explanation of its action unless there is a sufficient basis in the evidence for doing so." (cleaned up) (citations omitted)).

3. Lisan likewise fails to demonstrate that the VA's proffered reason was insufficient to warrant his suspension. Lisan's intentional violations of the no-contact orders, the VA explained, violated VA policy, threatened harassment to CRNAs, and risked patient safety. Those violations, which prompted Lisan's suspension, provide a sufficient basis for his suspension.

At day's end, Lisan fails to demonstrate that the VA's proffered reason for his suspension was pretextual.

## CONCLUSION

For these reasons, we **AFFIRM** the judgment of the district court.