*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 12a0291p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

CAROLE A. TINGLE,

      *Plaintiff-Appellant,*

     *v.*

    No. 11-3494

ARBORS AT HILLIARD; HILLIARD CARE, LLC;
and EXTENDICARE HEALTH SERVICES, INC.,

      *Defendants-Appellees.*

Appeal from the United States District Court
for the Southern District of Ohio at Columbus.
No. 2:09-cv-1159—Gregory L. Frost, District Judge.

Decided and Filed: August 29, 2012

Before: COOK and STRANCH, Circuit Judges; LAWSON District Judge.*

_____

## COUNSEL

_____

**ON BRIEF:** Phillip L. Harmon, Worthington, Ohio, for Appellant. Brian J. Kelly, FRANTZ WARD LLP, Cleveland, Ohio, for Appellees.

_____

## OPINION

_____

DAVID M. LAWSON, District Judge. Plaintiff Carole Tingle alleged in a complaint that she was disciplined and ultimately terminated from employment by defendant Arbors at Hilliard, a nursing home in Hilliard, Ohio, in retaliation for speaking with investigators from the Ohio Department of Health following the death of a nursing-home resident. She brought her claim under Ohio Revised Code § 3721.24(A), which prohibits retaliation for participating in a Department of Health investigation, and Title

_____

*The Honorable David M. Lawson, United States District Judge for the Eastern District of Michigan, sitting by designation.

1

VII of the Civil Rights Act of 1964. Arbors at Hilliard denied any retaliatory motive and contended that the termination was justified by the company's progressive discipline policy. The district court granted summary judgment to the defendants on both counts, and the plaintiff timely appealed the decision on the state law claim only. We affirm.

I.

The dispute in this appeal focuses mainly on the "pretext" element of the familiar *McDonnell Douglas* evidentiary framework for assessing the adequacy of circumstantial evidence of an employer's illegal motive for taking adverse employment action. The defendants contended in the district court that they fired the plaintiff for conduct that violated work rules, as prescribed by their written discipline policy. The plaintiff argues that factual disputes exist over whether she actually engaged in the conduct that subjected her to discipline under the defendants' policy.

The Arbors organization published an employment manual that set out a five-step progressive discipline policy, which calls for a disciplinary action report (DAR) whenever an employee violates a work rule. The policy classifies offenses at three levels. A "Class I" violation will result in a DAR; a "Class II" violation is more serious and an employee can be discharged for committing three "Class II" violations within twelve months. A "Class III" violation justifies immediate termination regardless of the lack of prior discipline.

The basic facts of the case were ably summarized by the district court as follows:

Plaintiff, Carol Tingle, was formerly employed as a registered nurse with Defendant Arbors at Hilliard, a nursing home located in Hilliard, Ohio. Arbors at Hilliard is a registered trade name of Defendant Hilliard Care, LLC, a subsidiary of Defendant Extendicare Health Services, Inc., the [latter] of which are headquartered in Milwaukee, Wisconsin. This Court will refer to Defendants as "Arbors."

On June 27, 2008, a resident passed away at Arbors during Tingle's shift. The parties dispute the events that led to the Hilliard Police Department arriving to assess the resident's death. As a result of the circumstances surrounding the death, Arbors reported that Tingle's actions constituted a Class II violation in a Disciplinary Action Report ("DAR") dated June

27, 2008 ("6-27-08 DAR"). In the 6-27-08 DAR, Arbors indicated that Tingle failed to instruct another employee to conduct CPR on the resident and that Tingle had failed to notify the resident's physician.

In July 2008, the Ohio Department of Health ("ODH") investigated the June 2008 incident. ODH met with numerous Arbors employees, including Tingle, to discuss the incident. During this investigation, a question arose as to whether the expiration date on Tingle's CPR certification card had been altered. Arbors suspended Tingle pending further investigation. Arbors concluded its investigation and subsequently reinstated Tingle with back pay for the days missed during her suspension. As a result of the suspension, however, Arbors had issued Tingle a DAR on July 24, 2008 ("7-24-08 DAR"), for a Class II violation for violating a rule in the employee handbook. Tingle retained an attorney, who contacted Arbors to remove the 7-24-08 DAR from Tingle's employment file and Arbors agreed to remove that DAR from her file, not count it as progressive disciplinary action, and place the DAR in a sealed file.

On October 23, 2008, Arbors issued Tingle another DAR ("10-23-08 DAR") because she failed to follow a direct order from a supervisor, which is a Class III violation. Arbors indicated in the DAR that Unit 2 Manager Deanna Collins had told Tingle to return an orientee at a certain point in time, but that Tingle had failed to direct the orientee properly. Tingle asserted that Liessen Davis, Director of Nursing, permitted Tingle to keep the orientee. According to Arbors Administrator Tammy Meyers, Arbors reduced the 10-23-08 DAR from a Class III violation to a Class II violation.

On March 31, 2009, Arbors issued Tingle her final DAR ("3-31-09 DAR"), which resulted from Tingle's improper documentation of information in a patient's medical record and a violation of a safety rule, both of which are Class II violations. Arbors noted in the DAR that Tingle had falsely indicated in a patient's treatment record that she had changed the patient's dressing, that she had left a syringe by a patient's bedside during her shift, and that she had left the medical cart unlocked. As a result of the 3-31-09 DAR, Meyers and Arbors Staff Development Coordinator Shauna Arnold met with Tingle to present her with the final DAR and to terminate her employment. Tingle argues that the 3-31-09 DAR was unwarranted and contained incorrect information. She contends that the time the syringe was found and who found it are questionable, that the medical cart involved was not under her control, and that she did not falsify the treatment records.

*Tingle v. Arbors at Hilliard*, Case No. 09-cv-01159, slip op. at 1-3 (footnote omitted).

The parties do not dispute the district court's basic outline of the facts. However, Tingle points to some more specific facts in making her argument, beginning with the June 27, 2008 DAR. That report states that Tingle was acting as a supervising nurse when a death was reported to her, that she failed to instruct a nurse to perform CPR, and that she failed to notify the patient's physician immediately of the patient's death—all facts that are disputed. Tingle testified at her deposition that she performed CPR on the patient. Medical records reflect that Tingle called the patient's sister, who requested that the police be called. And after the police assessed the patient and called the patient's sister to inform her that the death was not suspicious, Tingle called the patient's physician.

The Ohio Department of Health investigated the incident on July 17 and 18, 2008. In an affidavit, Tammy Meyers, an administrator at the Arbors facility, stated that during the course of the investigation, a state surveyor reviewed the CPR cards of employees and reported to Meyers that the expiration date on the Tingle's card appeared to have been altered. Meyers stated that she found the expiration date suspicious because it made the card valid for four years, but when she and the Staff Development Coordinator contacted the American Heart Association, they were told that the normal certification period was two years. That suspicion resulted in Tingle's suspension between July 18, 2008 and July 23, 2008. The suspension was documented in a DAR issued on July 24, 2008. Tingle was later paid for the days of work that she missed, and the defendants agreed to remove the DAR from Tingle's file.

The October 23, 2008 DAR states that Tingle committed a Class III dischargeable offense by refusing to follow a direct order from a supervisor to send an orientee to Unit 2. Tingle insists that she had been given permission to keep the orientee in Unit 1 by Liessen Davis. She also states that the individual who gave the order to return the orientee, Deanna Collins, was not her supervisor because she was the Unit 2 Unit Manager and Tingle worked in Unit 1, where she was supervised by Christopher Barrows. Tingle points to a note and testimony from Liessen Davis, who wrote the

DAR, in which Davis states that she did not give Tingle permission to retain the orientee in Unit 1 and that she honestly believed that Tingle violated a work rule.

As to the March 31, 2009 DAR, Tingle delves into more detail about the three alleged violations stated therein. She identifies five statements in the DAR that she contends are factually false. First, the DAR states that a syringe was found at 7:30 a.m., but an email from Unit 1 Manager Barrows states that the used syringe was reported to him at 8:00 a.m. Second, the DAR states that the syringe was found before the registered nurse for the day shift assumed the keys, but in the same email, Barrows states that the lost syringe was found after Ameenah Abdullah relieved Tingle; and there was deposition testimony from Abdullah in which she states that she found the syringe after receiving the keys to the medication cart from Tingle. Third, the DAR states that the syringe was found by the Unit Manager, but the evidence cited above suggests that Abdullah, rather than Barrows, found the syringe. Fourth, the DAR states that the medication cart was unlocked and Davis testified that Barrows found both a syringe and an unlocked medication cart before the day shift nurse assumed the keys from Tingle. However, Tingle states that Barrows's shift did not overlap with hers, as she finished working at 7:00 a.m. and Barrows began work at 8:00 a.m.

Fifth, and most extensively, Tingle points out what she characterizes as inconsistent facts surrounding the missing-heel-dressing incident. The DAR states that Tingle had documented a treatment as having been done when in fact she had not done the treatment. A note memorializing Tingle's termination meeting states that she had signed off as having checked a patient's dressing on March 26, 2009, but that it was discovered subsequently that the dressing was not in place. In a note dated March 27, 2009, Barrows stated that on that date, he had discovered that a patient's right heel dressing was not in place, despite Tingle's note that she had checked the dressing. Barrows observed that it was highly unlikely that the dressing had fallen off by itself given the nature of the dressing and the patient. The DAR states that the unit manager changed the dressing; Barrows testified in his deposition that to change the dressing meant the same thing as to reapply it. Davis testified that when Barrows changed the

dressings, one heel dressing was in place and the other was not, although she identified the missing dressing as the left heel dressing.  The patient's care chart indicates that the last person to change the heel dressings was Tingle on March 24, 2009.

The district court concluded that the plaintiff established a *prima facie* case for retaliation based on adverse employment actions consisting of the plaintiff's suspension, the July 24, 2008 DAR, the October 24, 2008 DAR, and her termination.  The court also found that the plaintiff had received three Class II or higher offenses in the twelve months before her termination, excluding the expunged discipline, which justified termination under the progressive-discipline policy, and therefore the defendants presented evidence of a legitimate, non-retaliatory reason for firing the plaintiff.  The district court then found that the plaintiff failed to present evidence that the defendants did not honestly believe in the facts underlying her disciplines and eventual termination.  Noting that a mere dispute as to the facts upon which the adverse action is based is insufficient to establish pretext, the district court found the plaintiff's factual disputes as to the underlying allegations to be "ultimately irrelevant."  The district court held that "[t]he uncontroverted evidence . . . indicates that [the defendants], reasonably relying on the numerous particularized facts that were available, made informed and considered decisions that lack any discriminatory or retaliatory animus."

The plaintiff filed a timely appeal from the order granting the defendants summary judgment.

## II.

This court reviews a district court's grant of summary judgment *de novo*.  *Disc. Tobacco City & Lottery, Inc. v. United States*, 674 F.3d 509, 521 (6th Cir. 2012).  Courts may grant summary judgment only where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  When analyzing a motion for summary judgment, we draw all reasonable inferences in favor of the non-moving party and construe all evidence in the light most favorable to the non-moving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  However, a mere "scintilla" of evidence in

support of the non-moving party's position is insufficient to defeat summary judgment; rather, the non-moving party must present evidence upon which a reasonable jury could find in her favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

> Ohio Revised Code section 3721.24(A) provides that:
>
> No person or government entity shall retaliate against an employee . . . who, in good faith, makes a report of suspected abuse or neglect of a resident . . .; indicates an intention to make such a report; [or] provides information during an investigation of suspected abuse, neglect, or misappropriation conducted by the director of health . . . .  For purposes of this division, retaliatory actions include discharging, demoting, or transferring the employee or other person, preparing a negative work performance evaluation of the employee or other person, reducing the benefits, pay, or work privileges of the employee or other person, and any other action intended to retaliate against the employee or other person.

Ohio Rev. Code § 3721.24(A).

The plaintiff did not offer any direct evidence of retaliation.  Therefore, to succeed on her claim, she must construct a circumstantial case, which invokes the three-part protocol described in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), used in most other employment discrimination cases.  *Donald v. Sybra, Inc.*, 667 F.3d 757, 761 (6th Cir.  2012); *see also Imwalle v. Reliance Med. Prods., Inc.*, 515 F.3d 531, 544 (6th Cir. 2008) ("When a plaintiff presents only circumstantial evidence, we examine Title VII, ADEA, and Ohio state-law retaliation claims under the same *McDonnell Douglas/Burdine* evidentiary framework that is used to assess claims of discrimination."); *Amini v. Oberlin Coll.*, 440 F.3d 350, 358 (6th Cir. 2006) (noting that "federal courts follow the burden-shifting framework that the Supreme Court has prescribed for analogous civil rights cases described in *McDonnell Douglas v. Green*, 411 U.S. 792 (1973), and *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248 (1981)").  Under the *McDonnell Douglas* analysis, a plaintiff must first make out a *prima facie* case of retaliation under the Ohio statute. *See Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 315 (6th Cir. 2001).  "The burden then shifts to [the defendant] to articulate a legitimate, nondiscriminatory reason for [the adverse action]." *Ibid.*  If the

defendant states such a reason, the plaintiff then has the burden of showing that the defendant's articulated reason is a pretext for retaliation. *Ibid.*

The defendants argue on appeal that the plaintiff's proof of a *prima facie* case is wanting. But because we agree with the district court that the plaintiff has not shown pretext, we need not address the defendants' argument on that point.

"Under the law of our circuit, a plaintiff can show pretext in three interrelated ways: (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that they were insufficient to motivate the employer's action." *Romans v. Mich. Dep't of Human Servs.*, 668 F.3d 826, 839 (6th Cir. 2012) (quoting *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009)); *see also Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994), *overruled on other grounds by Gross v. FBL Fin. Servs.*, 557 U.S. 167, 179 (2009). We have acknowledged the criticism that has been leveled at the practice of segmenting the pretext inquiry into those three categories. *See Chen*, 580 F.3d at 400 n.4. But we have never regarded those categories as anything more than a convenient way of marshaling evidence and focusing it on the ultimate inquiry: "did the employer fire the employee for the stated reason or not?" *Ibid.* As we have stated, "at bottom the question is always whether the employer made up its stated reason to conceal intentional [retaliation]." *Ibid.*

The plaintiff says that she was not guilty of the conduct that led to the DARs and her ultimate termination, and she says that the factual dispute over the propriety of her discipline makes summary judgment improper. But a case alleging unlawful retaliation is not a vehicle for litigating the accuracy of the employer's grounds for termination. Instead, the employee also must offer some evidence that not only were the employer's reasons false, but that retaliation was the real reason for the adverse action. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (stating that "a reason cannot be proved to be 'a pretext for discrimination' unless it is shown both that the reason was false, and that discrimination was the real reason"). Therefore, the plaintiff was required to offer evidence from which a jury could reasonably reject the defendants' stated reason for

disciplining—and ultimately firing—her, and that it used those reasons to mask its retaliation against her for speaking to the Ohio investigators.  *See Surry v. Cuyahoga County Cmty. College*, 778 N.E.2d 91, 97-98 (Ohio Ct. App. 2002).

If an employer has an "honest belief" in the nondiscriminatory basis upon which it has made its employment decision (i.e. the adverse action), then the employee will not be able to establish pretext.  *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001) (stating that "as long as an employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect").  As we have stated, "[w]hen an employer reasonably and honestly relies on particularized facts in making an employment decision, it is entitled to summary judgment on pretext even if its conclusion is later shown to be 'mistaken, foolish, trivial, or baseless.'"  *Chen*, 580 F.3d at 401 (quoting *Clay v. United Parcel Serv., Inc.*, 501 F.3d 695, 713-15 (6th Cir. 2007)).

The employer's claim of honest belief is necessarily tied to the nature of its investigation and disciplinary decision process.  We have noted that the "key inquiry . . . is 'whether the employer made a reasonably informed and considered decision before taking' the complained-of action."  *Michael v. Caterpillar Fin. Servs. Corp.,* 496 F.3d 584, 598-99 (6th Cir. 2007) (quoting *Smith v. Chrysler Corp.*, 155 F.3d 799, 807 (6th Cir. 1998)).  The employer certainly must point to particularized facts upon which it reasonably relied.  But "we do not require that the decisional process used by the employer be optimal or that it left no stone unturned."  *Smith*, 155 F.3d at 807; *see also Allen v. Highlands Hosp. Corp.*, 545 F.3d 387, 398 (6th Cir. 2008).

To defeat a summary judgment motion in such circumstances, the "plaintiff must produce sufficient evidence from which the jury could reasonably reject [the defendants'] explanation and infer that the defendants . . . did not honestly believe in the proffered nondiscriminatory reason for its adverse employment action."  *Braithwaite v. Timken Co.,* 258 F.3d 488, 493-94 (6th Cir. 2001) (internal citations, quotation marks, and brackets omitted) (alteration in original).  For example, the plaintiff may produce

evidence that an error by the employer was "too obvious to be unintentional." *Smith*, 155 F.3d at 807 (citation omitted). However, "[a]n employee's bare assertion that the employer's proffered reason has no basis in fact is insufficient to call an employer's honest belief into question, and fails to create a genuine issue of material fact." *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 285 (6th Cir. 2012) (quoting *Joostberns v. United Parcel Servs., Inc.*, 166 F. App'x 783, 791 (6th Cir. 2006)).

Tingle argues that the inconsistencies among the disciplinary reports, contemporaneous or near-contemporaneous statements by the defendants' other employees, and deposition testimony by the supervisor who wrote the reports would permit a reasonable jury to infer that the defendants did not actually have an honest belief in their rationale for terminating her. We disagree.

Tingle argues in her reply brief that the June 2008 DAR was not justified, which demonstrates that the defendants were biased against her. However, she offers no evidence, beyond her own assertions, that her conduct did not merit a DAR; indeed, she admits in her brief to the conduct that formed the basis of the DAR. Tingle also posits that the accusations in the June 2008 DAR "illustrates why Arbors dealt so harshly with her on July 18, 2008." That theory has little to do with retaliation, however. Although the June 2008 incident was serious enough to prompt an investigation by the Ohio Department of Health, it predated the protected conduct. Intensified scrutiny in the wake of protected activity may support a claim of retaliation, *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 589 (6th Cir. 2009), but the anti-retaliation statute does not protect the plaintiff from heightened scrutiny prompted by prior misconduct on the job rather than the protected activity.

Tingle also argues that the July 2008 suspension and DAR over her CPR card demonstrate that the defendants did not have honest belief in their proffered reason for terminating her. She contends that because the July 24, 2008 DAR was given after the suspension was lifted, the DAR must have been retaliatory, since it was issued after the defendants had determined that the CPR card was not altered. However, the record evidence includes an unrebutted affidavit from Tammy Meyers stating that she received

notice from an Ohio Department of Health investigator that Tingle's CPR card appeared to have been altered. She then contacted the American Heart Association and found that although the Tingle's card indicated that she was certified for four years, the certification generally was for only two years. Although Tingle asserts that this evidence is not objective because it comes from an employee of the defendants, she has offered no evidence to counter it that would suggest that the defendants' investigation was inadequate. Finally, it is uncontroverted that Tingle was paid later for the days of her suspension and the DAR was placed in a sealed file. But those facts are insufficient to suggest that the defendants lacked an honest belief in their proffered reasons for their actions.

Tingle also attacks the October 2008 DAR, arguing that there is no proof that she was issued an order not to keep the orientee on her unit. However, just as with the July 2008 suspension and DAR, the record reflects that the defendants undertook a reasonable investigation and made a decision based on the facts before them at the time. The DAR reflects that the Unit Manager spoke to witnesses, including the orientee in question, before issuing the DAR. The Unit Manager also had personal knowledge of the events in question, as she had spoken with Tingle and discussed the orientee's assignment. This court has found far less robust investigations sufficient to substantiate an honest belief entitling an employer to summary judgment. *See Seeger*, 681 F.3d at 286-87. Tingle also points to the defendants' downgrade of that violation from a Class III to a Class II offense, insisting that it establishes that the defendants did not have an honest belief that she violated a work rule. However, the inference actually cuts the other way: if the defendants did not have an honest belief in the basis for the DAR and their purpose was purely retaliatory, they could have terminated the plaintiff. Downgrading the offense level was the more lenient option.

Tingle's most extensive challenge—to the March 2009 DAR—consists of highlighting several inconsistencies between various witness statements and testimony. Most of those inconsistencies, however, are entirely irrelevant. Whether the syringe was found at 7:30 or at approximately 8:00; whether the syringe was found before or after

Abdullah assumed the keys; whether the syringe was found by Abdullah or Barrows—none of those inconsistencies undermine the central finding in the DAR, which was that Tingle left a syringe and needle by a patient's bedside. The record reflects that the defendants based the DAR on reports from both Barrows and Abdullah, who also provided corroborating statements. That those statements varied in some small details does not demonstrate that they are unworthy of credence or that the defendants could not have an honest belief that Tingle violated a work rule.

In her challenge to the falsification-of-records charge, Tingle appears to suggest that the DAR was issued on the basis that Tingle did not *change* the heel dressing. But all the evidence in the record, including the DAR and statements and deposition testimony from Barrows and Davis, is consistent in demonstrating that Tingle's violation consisted of falsely reporting that she *checked* the dressing when in fact she did not. The record states that Tingle wrote on a patient's chart that she checked the patient's heel dressings; the patient's right heel dressing was later found to be missing; the right heel dressing could not have fallen off on its own; Tingle could not actually have checked the patient's heel dressings, because if she had, she would have observed that the right heel dressing was missing; and therefore, her statement on the patient's chart that she checked the heel dressings was false. Tingle's extensive discussion about the left heel dressing misses the point. The defendants never alleged that there was ever a problem with that dressing.

Tingle also argues that although the DAR states that Barrows found a medical cart unlocked at 7:30 a.m. while it was under Tingle's control, Barrows testified at deposition that he generally arrived at work at 8 a.m., when the medication cart would be under the control of Abdullah. Viewing the evidence in the light most favorable to the plaintiff, that discrepancy, combined with a lack of any other evidence in the record that a medication cart actually was found unlocked or that Barrows arrived at work earlier than usual on the day in question, could suggest that the violation has no basis in fact. But the DAR reported multiple violations, and the syringe and false-reporting

incidents themselves supported work-rule violations.  Tingle has not shown that the defendants lacked an honest belief in those violations.

Tingle criticizes the defendants' reliance on the testimony and statements of managers and employees who "had an ax to grind against" her.  But she has not offered any evidence that the individuals involved in disciplining and terminating her had personal animus against her.  Even if she had, that alone would not be enough to demonstrate retaliatory motive or demonstrate that the defendants lacked an honest belief in their stated motive.  *Seeger*, 681 F.3d at 278 n.2, 287 (finding no genuine issue of material fact as to whether an employer had an honest belief in its non-retaliatory reason for terminating a plaintiff even where the employer's decision rested on statements from other employees with known animus against the plaintiff).  Moreover, once a defendant has advanced a non-retaliatory reason for terminating an employee, it is the plaintiff's burden to come forward with evidence that would tend to undermine the legitimacy of that reason.  *Dolan v. St. Mary's Mem'l Hosp.*, 794 N.E.2d 716, 721 (Ohio Ct. App. 2003).  A plaintiff facing a summary judgment motion cannot "rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact" but must make an affirmative showing with proper evidence in order to defeat the motion.  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).  Tingle has failed to make such a showing in this case.

III.

For the reasons stated above, we **AFFIRM** the judgment of the district court.