NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 18a0209n.06

Case No. 17-2158

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Apr 23, 2018
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| MICHELLE H. BAILEY, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| OAKWOOD HEALTHCARE, INC., d/b/a | ) | |
| OAKWOOD HOSPITAL & MEDICAL | ) | |
| CENTER, | ) | MEMORANDUM OPINION |
| | ) | |
| Defendant-Appellee. | ) | |

BEFORE: BATCHELDER, McKEAGUE, and GRIFFIN, Circuit Judges.

**McKEAGUE, Circuit Judge.** Plaintiff Michelle Bailey, having worked for defendant Oakwood Healthcare, Inc. ("Oakwood") as Senior Staffing Professional for less than eight months before beginning a three-month maternity leave, was fired the day she returned from leave. Having had no prior notice of dissatisfaction with her performance, Bailey sued Oakwood under federal and state law, alleging her termination was motivated by discriminatory and retaliatory animus.

Following discovery, Oakwood moved for summary judgment. Oakwood contended that it had, during Bailey's maternity leave, uncovered both deficiencies in her performance and falsifications in her employment application that justified her discharge. The district court granted the motion, concluding Bailey had failed to adduce sufficient evidence to support a

finding that Oakwood's nondiscriminatory grounds were a pretext for unlawful discrimination. Bailey asserts several claims of error on appeal. Because we find the district court's opinion to be thorough and well reasoned, we affirm on the basis of its opinion, and for the additional reasons set forth below.

## I

We start by accepting the district court's finding or presumption that Bailey has met her burden of establishing a prima facie case in support of each of her federal and state law claims for race discrimination, age discrimination, pregnancy discrimination, and retaliation. It is likewise clear that Oakwood has rebutted each prima facie case by identifying legitimate grounds for its actions. The real battleground on appeal revolves around the sufficiency of the evidence to create a triable question on Bailey's claim that Oakwood's given reasons are pretextual. In this regard, as the district court observed, Bailey is obliged to show that "(1) the employer's stated reason had no basis in fact, (2) the stated reason did not actually motivate the employer, or (3) the stated reason was insufficient to warrant the adverse employment action." R. 69, Opinion at 25, Page ID 2016 (quoting *Loyd v. St. Joseph Mercy Oakland*, 766 F.3d 580, 590 (6th Cir. 2014)). Beyond showing that the stated reason for her discharge is false, however, Bailey must also produce sufficient evidence from which the fact finder could reasonably infer that the asserted unlawful discrimination or retaliation was the real reason. *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 285 (6th Cir. 2012) (discrimination claim); *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530 (6th Cir. 2012) (retaliation claim). We review de novo the district court's assessment that Bailey failed to meet her burden. *See Tingle*, 692 F.3d at 529–30.

In relation to all four theories of relief, Bailey makes several arguments challenging both of Oakwood's given reasons for discharging her. As to the first reason, falsifications in her

employment application, Bailey's immediate supervisor, Manager of Recruitment and Retention Pandora Walker (who, like Bailey, is African-American), explained that when Bailey began her maternity leave on December 5, 2013, she (Walker) and others had to assume Bailey's responsibilities. In doing so, Walker uncovered deficiencies in Bailey's performance. Discovery of these deficiencies led Walker to review Bailey's qualifications for the position, as set forth in her employment application. Walker's investigation uncovered a two-year-earlier application for an Oakwood position by Bailey. When Walker compared the two resumés, she discovered discrepancies, indicating to her that Bailey had falsified her later application by exaggerating her prior experience and qualifications. Walker and Director of Human Resources David Squire confronted Bailey with the discrepancies when she returned from maternity leave on March 20, 2014.

Bailey did not, and does not, deny that the application contained inaccuracies. "Falsifications," however, is too strong, she says. Bailey prefers to characterize the inaccuracies as, at worst, mere "embellishments" of the time periods and job titles of positions she held at Beaumont Hospital. Her argument that this reason is pretextual does not assert, therefore, that the reason has no basis in fact. Rather, she contends her embellishments are insufficient to justify termination. After all, she insists, the job descriptions set forth in both applications are roughly consistent.

The district court was not persuaded. After summarizing the relevant discrepancies identified by Oakwood and finding Bailey's characterization "more than a little disingenuous," the court concluded that resumé misrepresentation by a senior human resources professional could reasonably be deemed sufficiently egregious to defy correction by mere counseling or other lesser discipline. R. 69, Opinion at 14, 31, 34, Page ID 2005, 2022, 2025. In the process,

the court correctly recognized that it had no prerogative to second-guess the wisdom of Oakwood's standards or to substitute its judgment for that of management. *Id.* at 27, Page ID 2018 (citing *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 462 (6th Cir. 2004)). Indeed, "[w]hen an employer reasonably and honestly relies on particularized facts in making an employment decision, it is entitled to summary judgment on pretext even if its conclusion is later shown to be 'mistaken, foolish, trivial, or baseless.'" *Tingle*, 692 F.3d at 531 (quoting *Chen v. Dow Chem. Co.*, 580 F.3d 394, 401 (6th Cir. 2009)). *See also*, *Loyd*, 766 F.3d at 589–90; *Seeger*, 681 F.3d at 285–86.

We find no error in the district court's conclusion that Oakwood's first reason is neither trivial nor insufficient to justify terminating Bailey's employment. Bailey having failed to show that Oakwood's first legitimate nondiscriminatory reason is false or insufficient, it stands effectively unrebutted, apart from her contention that it's not the real reason, addressed below.

Secondly, Oakwood's decision was motivated by dissatisfaction with her job performance. Oakwood identified various errors made by Bailey in processing others' applications for positions with Oakwood from April to December 2013. The record of Bailey's various missteps is compiled in two exhibits. The first of these consists of 28 pages of email messages and other correspondence collected by Walker. R. 41-18, Performance Issues, Page ID 1260. The second, also created by Walker, notes Bailey's chronic tardiness and includes a listing of twelve performance errors from September 6 to December 5, 2013. R. 41-19, Unacceptable Performance Listing, Page ID 1289. These documents were presented to Bailey by Walker and Squire in the March 20, 2014 meeting, but Bailey contends she was not allowed to review them

and was able to explain her position on only a handful of incidents during the meeting. R. 34-5, Bailey Dep. at 83–88, Page ID 384–85.[1]

Apart from this partial defense of her job performance, the district court observed, the factual bases for many of the cited performance issues are effectively unrefuted and even conceded by Bailey. The court thus concluded that, again, Bailey's pretext arguments are dependent on her showing either that her performance deficiencies were insufficient grounds for termination or not the real reason. And again, the district court concluded that the record presented no justification to second-guess Oakwood's business judgment: "All in all, Plaintiff has not shown that her performance issues taken together were so objectively negligible as to permit an inference that they were nothing more than pretext." R. 69, Opinion at 28, Page ID 2019. And for the reasons stated by the district court, we agree.

## II

In support of her contention that Oakwood's given reasons were not actually the motivating force behind her termination, Bailey cites various circumstances. These circumstances are said to warrant a reasonable inference that Bailey was the victim of either race, age or pregnancy discrimination, or retaliatory animus. We note at the outset that, even though some of the cited circumstances tend to impugn the integrity of Oakwood's reasons, the record is devoid of evidence of either race or age discrimination beyond the elements of Bailey's prima

---

[1] Bailey has attempted to provide a fuller explanation of her role in the listed incidents in a 30-page unsworn declaration. R. 41-3, Bailey Dec., Page ID 1023. The district court granted Oakwood's motion to strike the declaration, however, because it was, as originally submitted, unsworn and unsigned and not in conformity with the requirements of 28 U.S.C. § 1746. R. 68, Order, Page ID 1981. The court noted that Bailey had an adequate opportunity to tell her story in a five-hour deposition and concluded that no exception to § 1746 was warranted. Bailey has challenged the ruling in this appeal.

Evidentiary rulings are reviewed for abuse of discretion. *Decker v. GE Healthcare, Inc.*, 770 F.3d 378, 391 (6th Cir. 2014). On due consideration of the district court's order in light of Bailey's present arguments, we find no abuse of discretion.

facie case on each count. That is, even if we recognize that the circumstances call Oakwood's reasons into question, they furnish no support for a reasonable inference that race or age discrimination was the real reason for Bailey's termination. Walker and Squire made the decision to hire Bailey in April 2013, despite knowledge of her race and age. The record is devoid of evidence of any change in their understanding of her race or age that played a role in their decision to terminate her employment a mere eleven months later. To this extent, Bailey has clearly failed to carry her burden of showing pretext, per *Seeger*, 681 F.3d at 285, and the district court's summary judgment on the race and age discrimination claims must be affirmed. Closer questions are posed by Bailey's pregnancy discrimination and retaliation claims.

The circumstances relied on by Bailey are summarized as follows:

(1) At the end of her four-month probationary period, Bailey's New Employee Assessment Form, completed by Walker and Squire in August 2013, showed that she received the highest possible rating, "3" or "Role Model" in ten out of thirteen categories, and received the next highest rating, "2" or "Solid Performer" in the remaining three categories. R. 41-10, Assessment Form, Page ID 1205.

(2) In relation to both the application-misrepresentation issue and the performance deficiencies, Oakwood failed to comply with its own Human Resources Policy by failing to give Bailey (a) notice of the deficiencies, (b) counseling, and (c) progressive application of corrective action. R. 41-17, HR Policy & Procedure, Page ID 1248–58.

(3) Inconsistencies between Walker's and Squire's versions of the timing of, and reasons for, the decision to terminate Bailey's employment.

(4) The temporal proximity between Bailey's announcement of her pregnancy and (a) Walker's restoration of an 8:00 a.m. daily start time for Bailey (after it had been relaxed to

8:30 a.m.); (b) an increase in her workload; and (c) her termination upon return from maternity leave.

(5) Bailey's having become more vocal in the Fall of 2013 about her perception that Walker exhibited racial bias in her treatment of certain African-American applicants.

## A. Inconsistent Explanations

The district court addressed each of these arguments forthrightly and, we believe, correctly. As to the asserted inconsistencies, Bailey contends the record supports the finding that Walker and Squire formed the intent to terminate her employment even before the meeting on March 20, 2014, not just after they found her response to their concerns unsatisfactory. The district court determined that any discrepancies were immaterial, distinguishing *Tinker v. Sears, Roebuck & Co.*, 127 F.3d 519 (6th Cir. 1997). Indeed, in *Tinker*, the fact questions at issue—regarding termination of a 29-year employee (whose performance as a mechanic had undisputedly been excellent) based on a single technical policy violation (failure to sign a work order)—gave rise to a suspicion of mendacity entirely different in character from the instant discrepancies. Here, by Bailey's own description of the March 20 meeting, Oakwood has relied from the beginning on both her performance deficiencies and resumé embellishments as grounds for its decision. R. 34-5, Bailey dep. at 84–102, Page ID 384–89. Speculation as to when, precisely, Oakwood, through its decision makers, formulated the resolve to terminate Bailey's employment is of little consequence.

## B. Failure to Follow Disciplinary Policy

Bailey's arguments about the significance of her positive performance evaluation and Oakwood's failure to follow its own progressive discipline policy are two parts of a whole. The district court placed little weight on the performance evaluation because it found that Bailey had

effectively conceded performance deficiencies—both before and after the evaluation. Indeed, the assessment form itself is not unequivocally "glowing." On a rating scale of 0 to 3 (0 = Unacceptable, 1 = Needs Improvement, 2 = Competent, 3 = Role Model), Bailey received an "overall rating" of 2, or Competent, in all three listed categories: specific job responsibilities, service excellence, and attendance. The assessment also includes the following comments:

> Michelle is a great addition to our team and continues to become proficient in her new role. She should pay a bit more attention to detail to ensure her work is accurate and positions are filled correctly.

R. 41-10, Assessment Form, Page ID 1205–06. The performance evaluation is thus not necessarily inconsistent with Oakwood's identification of continuing performance deficiencies after the evaluation. The continuing failure-to-pay-attention-to-detail inaccuracies that characterized Bailey's performance before and after the August 2013 evaluation, combined with concerns about the late-discovered application misrepresentations, represent facially valid reasons for Oakwood's termination that are not undermined by the performance evaluation.

But these concerns are not so serious, Bailey argues, that they could not have been appropriately addressed through progressive discipline in accordance with Oakwood's HR Policy. She contends Oakwood did not give her prior notice, counseling, or opportunity to complete a corrective action plan, measures that should ordinarily be expected prior to termination. This suggests, she argues, that Oakwood's proffered concerns were not the real reason for its decision.

The district court recognized that an employer's failure to follow its own internal disciplinary procedures may be probative evidence, but that more is required to create a genuine fact question on pretext, citing *Sybrandt v. Home Depot, U.S.A., Inc.*, 560 F.3d 553, 561 (6th Cir. 2009); *White v. Columbus Metro. Housing Auth.*, 429 F.3d 232, 246 (6th Cir. 2005); *Gunn v.*

*Senior Servs. of N. Kentucky*, 632 F. App'x 839, 846–47 (6th Cir. 2015).  The court noted that the HR Policy gives Oakwood management the discretion to tailor disciplinary responses based on the gravity of the infraction.  Whereas Bailey minimized the significance of her application misrepresentations, the court found Oakwood's position more persuasive, i.e., that resumé misrepresentations by a senior human resources professional represent an infraction so egregious as to defy correction by mere counseling or other lesser discipline.  R. 69, Opinion at pp. 31–35, Page ID 2022–26.

Oakwood's handling of the matter could have been better—especially considering that all involved are human resources professionals.  Still, we find no fault in the conclusion that Oakwood's decision was not so unreasonable as to be disbelieved by a reasonable jury.  *See Sybrandt*, 560 F.3d at 558; *Schoonmaker v. Spartan Graphics Leasing, LLC*, 595 F.3d 261, 268 (6th Cir. 2010).  Absent evidence of *unlawful* discrimination, the federal courts have no authority to interfere in private personnel management matters, however unwise or unfair they may appear to be.  *See Loyd*, 766 F.3d at 589–90; *Tingle*, 692 F.3d at 531; *Seeger*, 681 F.3d at 285–86.

### C.  Pregnancy Discrimination

Yet, Bailey insists there is evidence of unlawful discrimination.  The temporal proximity between the announcement of her pregnancy in August 2013 and her termination in March 2014, immediately after returning from leave, is said to give rise to a reasonable inference that she was terminated, not for the stated reasons, but because she became pregnant.  The reasonableness of the inference is said to be buttressed by the facts that:  (a) Walker restored her daily work start time to 8:00 am in October 2013; (b) Bailey's workload began to increase at about the same time; and (c) Walker had made disparaging remarks implying her disapproval of Bailey's pregnancy at the age of 40.

The district court rejected the temporal proximity argument, citing *Asmo v. Keane, Inc.*, 471 F.3d 588, 598 (6th Cir. 2006), where an employee's termination two months after the employer learned of her pregnancy was considered to be insufficient, standing alone, to show pretext. Similarly, in *Megivern v. Glacier Hills, Inc.*, 519 F. App'x 385, 398–401 (6th Cir. 2013), we held that a two-week period was not close enough, without more, to give rise to an inference of discrimination.

Here, in contrast, Bailey complains of a decision made not only seven months after Oakwood learned of her pregnancy, but also some period of time after she had ceased to be pregnant at all. If Oakwood had taken adverse action against Bailey before workplace burdens resulting from her pregnancy were actually borne by Walker and other employees, rather than afterward, then the timing would be more suspicious. But that's not what happened. We find no error in the district court's conclusion that Bailey's termination was too far removed from Oakwood's first knowledge of her pregnancy to suggest a causal nexus between the two. And this determination undercuts the significance of the other circumstances that are said to buttress an inference of pregnancy discrimination. Walker's insensitive comments about Bailey's pregnancy at age 40 reflect a lack of discretion, but nothing more. Nor is there great probative value in the fact that Bailey's start time was restored to the normal time of 8:00 a.m. by Walker when Bailey had undeniably continued to struggle with tardiness when her start time had been relaxed to 8:30 a.m.

Finally, the district court correctly rejected Bailey's argument that an increase in her workload in the Fall of 2013 signaled pregnancy discrimination. The court found the claim that Bailey was uniquely affected by an increased workload both unsupported by credible evidence and undermined by evidence that she had in fact invited Walker to assign her additional work in

June 2013. R. 69, Opinion at 37–38, Page ID 2028–29. Bailey argues on appeal that the court improperly overlooked statistical evidence. *See* Sealed Exhibit N. However, the urged comparison of "positions-filled" statistics reveals no great disparity between the performance levels achieved by Walker and Bailey and reveals nothing about workload. The statistical evidence is too ambiguous to warrant an inference of anything probative of pretext.

### D. Retaliation

Bailey's claim that her termination was the result of impermissible retaliation is based on the allegation that she had questioned Walker about apparent racial bias in her evaluations of certain employment applicants. The district court recognized that Bailey's alleged informal complaints to Walker about perceived racial bias could be considered "protected activity." Walker denied having discussed matters of race with Bailey, but the court assumed the truthfulness of Bailey's version. Still, for the reasons discussed above in relation to Bailey's other claims, the court held she had failed to adduce evidence sufficient to rebut Oakwood's facially valid reasons for terminating her employment. The court explicitly discussed situations involving three African-American applicants who Bailey contended had received less favorable treatment from Walker than Bailey had recommended. R. 69, Opinion at 8–11, Page ID 1999–2002. The court also recognized that Bailey acknowledged the existence of plausible, race-neutral reasons for the unfavorable treatment of each one, including the discovery that two of the three applicants had prior criminal records. Bailey contends the district court erred by failing to recognize the significance of the temporal proximity between her disagreements with Walker and her termination, and by failing to view the evidence in the light most favorable to her.

Again, we find no error. Suffice it to say that a reasonable fact finder confronted with evidence of disagreements between a relatively new subordinate African-American female

employee and her experienced African-American female supervisor, regarding appropriate treatment of three African-American applicants (among the several dozens considered), would hardly be justified under these circumstances in disbelieving the supervisor's facially valid, race-neutral reasons for overruling the subordinate's recommendations. That employees sometimes disagree on an appropriate course of action is not controversial. Nor is it surprising if the subordinate's opinion is overruled by the superior's. And when the applications of African-American applicants who suffered unfavorable treatment at the hands of African-American decision-maker Walker were undisputedly handicapped by other disqualifying facts, the race of the applicants facially appears to be merely incidental. It follows that Bailey's expressed subjective belief that racial bias played a role in the unfavorable treatment carries little weight in support of her showing that retaliation for protected activity was the real reason she was terminated.

Nor does the temporal proximity of Bailey's termination, seven months after she says she became more vocal in her disagreements with Walker, significantly alter the assessment. It is well established that temporal proximity alone is insufficient to support an inference of retaliation. *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 400 (6th Cir. 2010). In *Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516 (6th Cir. 2008), we reversed summary judgment for the defendant employer, holding that an employee's discharge the very day the employer learned of his protected activity (filing an EEOC claim), coupled with other evidence of retaliatory motivation, sufficed to create a triable fact issue on pretext. But, "the more time that elapses between the protected activity and the adverse employment action, the more the plaintiff must supplement his claim with 'other evidence of retaliatory conduct to establish causality.'" *Vereecke*, 609 F.3d at 400 (quoting *Mickey*, 516 F.3d at 525).

Here, Bailey's termination was several months removed from the last of her disagreements with Walker. Moreover, Oakwood's knowledge of the stated reasons for the termination arose largely in the meantime, i.e., after Bailey's maternity leave commenced and after the last of the disagreements. Such an intervening legitimate reason for discipline tends to defeat any inference of retaliation based on the proximity of the discipline to an earlier event. *Wasek v. Arrow Energy Servs., Inc.*, 682 F.3d 463, 472 (6th Cir. 2012) (citing *Vereecke*, 609 F.3d at 401). Hence, although Bailey has pointed to other grounds for questioning Oakwood's stated reasons, they all add up to only negligible support for a finding that retaliation for protected activity was the real reason for her termination.[2]

### III

For all the foregoing reasons, we find no error in the district court's award of summary judgment in favor of defendant Oakwood on all of Bailey's various federal and state law claims. The timing of Bailey's termination was unfortunate and the manner in which the decision was communicated was clumsy, to say the least—not in keeping with procedures one would expect to be observed by human resources professionals. Yet, despite the perceived unfairness, and despite counsel's vigorous advocacy, Bailey's claims that Oakwood's decision was actually

---

[2] Among the items cited are David Squire's handwritten notes of a telephone conversation he had with Oakwood's in-house counsel Patrice Baker on March 10, 2014, notes that were inadvertently produced by Oakwood in discovery. R. 48-1, Squire Notes, Page ID 1587. The district court granted Oakwood's motion to strike the notes from the record as privileged attorney-client communications. R. 56, Opinion, Page ID 1802. The court also denied Bailey's motion for reconsideration. R. 67, Order, Page ID 1975. Bailey has challenged the ruling on appeal. She argues that Oakwood's failure to label the document "confidential," failure to show the disclosure was inadvertent, and failure to timely assert the privilege are all circumstances warranting denial of the motion to strike.

The district court's ruling is well explained in its two orders. In the court's determinations that the notes reflect privileged communications and that Oakwood did not waive its privilege by the inadvertent disclosure, we find no abuse of discretion.

motivated by unlawful animus have not been sufficiently substantiated to warrant further proceedings.  The district court's summary judgment ruling is, accordingly, **AFFIRMED**.