NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0101n.06

No. 25-5610

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**

Mar 03, 2026

KELLY L. STEPHENS, Clerk

| | |
|---|---|
| ABIODUN ADEFURIN, | ) |
| Plaintiff-Appellant, | ) |
| | ) |
| v. | ) |
| | ) |
| MEHARRY MEDICAL COLLEGE, | ) |
| Defendant-Appellee. | ) |

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF TENNESSEE

OPINION

Before: MOORE, GIBBONS, and BLOOMEKATZ, Circuit Judges.

BLOOMEKATZ, Circuit Judge. Dr. Abiodun Adefurin, a resident at Meharry Medical College, claims that Meharry suspended him from work in retaliation for his use of Family and Medical Leave Act (FMLA) leave. The district court held that even if Dr. Adefurin had been able to establish his prima facie case of retaliation, he could not show that Meharry's legitimate, non-discriminatory reason for his discipline was pretextual. We agree there is no genuine dispute of material fact with respect to pretext. Accordingly, we affirm the grant of summary judgment to Meharry.

**BACKGROUND**

I.    **Factual Background**[1]

Dr. Adefurin was a resident physician in Meharry's residency program from July 2016 through June 2019. In April 2018, he requested, and Meharry approved, FMLA leave for the birth

---

[1] Because this case comes to us on review of summary judgment, we draw all reasonable inferences in favor of the non-moving party—here, Dr. Adefurin—and construe all evidence in the light most favorable to him. *See Tingle v. Arbors at Hilliard*, 692 F.3d 523, 529 (6th Cir. 2012).

of his child. Dr. Adefurin took approximately two weeks of FMLA leave in late May and early June 2018.

Several months later, on Friday, October 5, 2018, Dr. Adefurin did not show up for work. That evening Dr. Adefurin's chief resident emailed him asking why he had not been at work that day and why he had not notified her in advance of his absence. When Dr. Adefurin had not responded by Monday morning, the chief resident followed up with a second email. Dr. Adefurin responded that afternoon, explaining that he had been at a job interview. Then, rather than apologizing, he informed the chief resident that he had told an attending of his planned absence. He added that had the chief resident "not [been] absent from work, [he] would have informed [her] of [the] interview" and his associated absence. Email Msg., R. 29-13, PageID 666.

The chief resident found Dr. Adefurin's response to be "very contemptuous and simply unacceptable." *Id.* at PageID 668. She saw the incident as part of a broader "pattern of behavior" that "exhibited traits of unprofessionalism." Berko Disciplinary Letter, R. 29-7, PageID 620. So, the chief resident issued a written reprimand for unprofessional conduct, referring Dr. Adefurin to Meharry's Internal Medicine Clinical Competency Committee for disciplinary action. Dr. Adefurin appeared before the disciplinary committee at the end of October 2018. The members of the committee questioned him about his absence on October 5 as well as his subsequent email exchanges with the chief resident.

After that meeting, the disciplinary committee sent Dr. Adefurin a letter summarizing its determinations. It explained that Dr. Adefurin had failed to follow the proper notification procedures for missing work, had not responded in a timely manner to the chief resident's email, and had acted unprofessionally when he finally did reply. It further noted that previous chief residents had raised concerns about Dr. Adefurin's unprofessionalism, and that several attendings

expressed no surprise at the incident given their prior impressions of him. Ultimately, the committee "felt very strongly [he] purposefully wanted to disrespect [his] chief resident and the program." Suspension Memo, R. 29-8, PageID 624. On that basis, it suspended Dr. Adefurin for two weeks and placed a record of the suspension in his permanent file. An internal appeals committee unanimously upheld the disciplinary committee's determinations and further recommended that the residency program require Dr. Adefurin to complete a mandatory professionalism course. Dr. Adefurin completed the mandatory professionalism course and served a two-week suspension from December 9, 2018, to December 22, 2018. Although he asked, Meharry refused to remove the notation of the suspension from Dr. Adefurin's employment record.

## II.      Procedural History

On October 15, 2021, Dr. Adefurin filed this action against Meharry alleging that his two-week suspension and written reprimand amounted to retaliation under the FMLA. After the parties conducted discovery, Meharry moved for summary judgment on Dr. Adefurin's FMLA retaliation claim. The district court granted summary judgment to Meharry, holding that Dr. Adefurin had failed to make out his prima facie case of retaliation because he had not established a causal connection between his FMLA leave and the two-week suspension. It further held that, even if Dr. Adefurin had made out his prima facie case, he could not show that Meharry's legitimate, non-discriminatory reason for the two-week suspension was pretextual.

Dr. Adefurin timely appealed.

### ANALYSIS

We apply the *McDonnell Douglas* burden-shifting framework since Dr. Adefurin's retaliation claim relies on indirect evidence. *Kirilenko-Ison v. Bd. of Educ.*, 974 F.3d 652, 661 (6th Cir. 2020) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). Under that

framework, Dr. Adefurin must establish a prima facie case of retaliation. *Id.* To establish a prima facie case, he must present evidence (1) that he engaged in protected activity, (2) that Meharry knew about that activity, (3) that he suffered an adverse action, and (4) that the adverse action was causally connected with his protected activity. *Id.* If Dr. Adefurin establishes his prima facie case, then the burden shifts to Meharry to articulate a legitimate, non-retaliatory reason for its adverse action. *Id.* If Meharry provides such a reason, then the burden shifts back to Dr. Adefurin to show that the reason is pretextual. *Id.*

This case comes before us at the summary judgment stage and so the moving party—here, Meharry—must show that there that there is no genuine dispute as to a material fact at each step of the *McDonnell Douglas* analysis. *See* Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for [Dr. Adefurin]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In evaluating Meharry's motion for summary judgment, we view the evidence and draw all reasonable inferences in Dr. Adefurin's favor. *See King v. Steward Trumbull Mem'l Hosp., Inc.*, 30 F.4th 551, 559 (6th Cir. 2022). We review the district court's determination de novo. *Id.*

Because the pretext analysis is dispositive in this case, we begin at the third step of *McDonnell Douglas*. Even assuming Dr. Adefurin can establish a prima facie case, he has not pointed to evidence that creates a genuine question of material fact that Meharry's legitimate, non-retaliatory reason for disciplining him—his unexcused absence from work, failure to respond to the chief resident's email in a timely manner, and the unprofessional manner in which he responded—was pretextual.

A plaintiff can generally show pretext in three interrelated ways: (1) that the employer's "proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the

employer's action, or (3) that they were insufficient to motivate the employer's action." *Chen v. Dow. Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009). "[W]e have never regarded those categories as anything more than a convenient way of marshaling evidence." *Tingle*, 692 F.3d at 530. Ultimately,"[p]retext is a commonsense inquiry" where we ask whether Meharry disciplined Dr. Adefurin "for the stated reason or not?" *Chen*, 580 F.3d at 400 n.4.

Dr. Adefurin makes several arguments that he says provide "sufficient evidence" for a jury to "reasonably reject" Meharry's explanation of why it disciplined him. *Id.* at 400. Dr. Adefurin first highlights a WhatsApp message from his classmate to the rest of the residents in their year. The message related that the program's leadership had raised concerns about "a repetitive pattern" of residents "calling in sick/requesting FMLA" and had warned that abusing the program's leave policy could impact future professional recommendations. WhatsApp Msg., R. 29-3, PageID 609. Dr. Adefurin argues that these messages demonstrate that the Meharry attending physicians "had grown wary of residents' use of FMLA leave." Appellant Br. at 21. But Dr. Adefurin does not connect this message to his suspension. The chief resident, who initiated the disciplinary proceedings against him, did not receive that message because she was not part of the WhatsApp group. Nor did the chief resident attend the meeting where the program's leadership "talked about [potential] repercussions" for abusing FMLA protections. Berko Dep., R. 24-1, PageID 427. And even if that were not the case, expressing concern about abuse of the program's leave policy—and warning that such abuse could have professional consequences—is not the same as disciplining residents for taking FMLA leave, which the program leadership recognized was sometimes "genuine[ly]" taken. WhatsApp Msg., R. 29-3, PageID 609.

Next Dr. Adefurin relies on Meharry's treatment of other residents with unexcused absences from work. He first points to a resident who took FMLA leave, had an unexcused

absence, and then also faced a two-week suspension. Dr. Adefurin appears to argue that Meharry's animus towards residents who take FMLA leave is evident from the fact that both he and this other resident had taken FMLA leave and faced two-week suspensions. But the record shows that the other resident repeatedly lied about her whereabouts to program leadership. That amounts to independent misconduct that could furnish a legitimate basis for discipline. Absent additional evidence showing that it was the resident's FMLA leave, not their insubordination, that motivated the two-week suspension, this comparison does not support an inference of FMLA-related retaliation against Dr. Adefurin. Instead, this comparison arguably cuts against Dr. Adefurin because it demonstrates that Meharry treated unexcused absences consistently.

Dr. Adefurin also invokes another resident who did not take FMLA leave and had an unexcused absence from work but did not face a two-week suspension. Here he seems to contend that Meharry's different treatment of this "similarly situated" resident demonstrates its animus towards Dr. Adefurin and residents who take FMLA leave. Yet this other resident was not similarly situated to Dr. Adefurin in material ways. *See Redline v. Grosse Pointe Pub. Sch. Sys.*, 921 F.3d 599, 610 (6th Cir. 2019). Recall that Meharry suspended Dr. Adefurin for his disrespectful treatment of his chief resident and his history of unprofessional conduct. Dr. Adefurin has not identified an evidentiary basis showing that his colleague who was not suspended for his absence acted in a comparable manner. The comparison, then, is insufficient to create a jury question as to pretext.

Finally, Dr. Adefurin says the existence of complaints from other residents against Meharry for FMLA violations establish that his taking FMLA leave motivated the disciplinary committee's decision to suspend him. But Dr. Adefurin has not provided us with sufficient information about those claims to demonstrate that he was targeted for taking FMLA leave.

Accordingly, Dr. Adefurin has not furnished evidence from which a reasonable jury could conclude that Meharry suspended him for taking FMLA leave.

**CONCLUSION**

For the foregoing reasons, we affirm the district court's grant of summary judgment to Meharry.