NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0185n.06

No. 23-5594

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

ANTHONY L. GOODWIN,

    Plaintiff-Appellant,

v.

NEWCOMB OIL COMPANY, LLC,

    Defendant-Appellee.

)
)
)
)
)
)
)
)
)
)
)

**FILED**

Apr 26, 2024

KELLY L. STEPHENS, Clerk

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE WESTERN
DISTRICT OF KENTUCKY

OPINION

Before: GIBBONS, WHITE, and THAPAR, Circuit Judges.

HELENE N. WHITE, Circuit Judge. Plaintiff-Appellant Anthony Goodwin appeals the grant of summary judgment to his former employer Defendant-Appellee Newcomb Oil in this action alleging that Goodwin's employment as a truck driver was terminated based on race discrimination. We REVERSE and REMAND for further proceedings consistent with this opinion.

**I. Facts**

Goodwin, an African American truck driver, began working for Newcomb Oil on December 26, 2018. His duties required him to load, transport, and unload petroleum products using a large tanker. Because petroleum is a highly flammable and dangerous substance, Goodwin had to exercise significant care when driving the tanker. Goodwin had to follow guidelines listed within the Kentucky Commercial Driver License Manual ("CDL Manual"), the Federal Motor Carrier Safety Regulations ("FMCSR"), Newcomb Oil's employment manual, and any applicable

traffic laws. Goodwin had no safety incidents from the time he was hired until late September 2019.

## A. The Incidents

On September 27, 2019, Newcomb Oil allegedly received a call from a member of the public, who complained that, a day earlier, a trucker "was weaving in and out of traffic without using blinkers and then got behind her in the fast lane and was tailgating her." R. 143-1, PID 5952. Because Newcomb Oil's trucks do not list a phone number, the caller likely had to look up the company on her own. A summary of the call was emailed to Adrienne Hardin, Newcomb Oil's Transportation Administrator, who investigated the incident. Using location data, Hardin determined that Goodwin was the driver of the truck and that he had been speeding at the location indicated in the complaint.

However, there was no evidence to corroborate the claim that Goodwin had been tailgating anyone, nor that he had been weaving through traffic. Newcomb Oil apparently never took down the caller's contact or identifying information, and the company was unable to get her name through caller ID. Nor was there a recording of the phone call or any other "hard" evidence that it occurred. As a result, Goodwin was never able to locate the complainant to corroborate or dispute Newcomb Oil's account.

On September 29, 2019, Hardin witnessed a tanker quickly pull out of a Newcomb Oil location and turn onto a state highway.[1] Hardin allegedly believed that drivers were required to stop before turning onto the highway, but the truck did not stop before making its turn.[2] According to Hardin, the tanker recklessly pulled in front of another car, which had to "slam on its brakes" to

---

[1] The speed limit was 55 m.p.h. on the highway.

[2] There was no stop sign, but Newcomb Oil asserts there was a "white line" requiring drivers to stop. R. 146-3, PID 6298.

avoid a collision. R. 146-3, PID 6263. Hardin informed Doug Sims, Newcomb Oil's dispatcher, and Louis Ballard, the company's "Category Manager," of her observations and recommended checking the gas station's surveillance footage to corroborate her account.

Using "location history maps," Hardin determined that the driver of the tanker was Goodwin. R. 146-9, PID 6415. Goodwin admits that he drove the tanker on the video and that he "clipped" the curb as he turned onto the highway. R. 146-4, PID 6349. However, Goodwin disputes Hardin's interpretation of the incident because the video shows that he "made a full turn" and was "halfway down the road" by the time the oncoming car caught up to his tanker. *Id.*

## B. Investigation and Termination

On September 30, Newcomb Oil's owners, Daniel Newcomb and Jack Newcomb, discussed the incidents over email with Hardin, Sims, and Glenn Higdon, the company's human resources manager.[3] Higdon believed that Goodwin had violated 49 C.F.R. § 383.5, which prohibits holders of a CDL from, among other actions, "driving recklessly, making improper or erratic lane changes, [and] following a vehicle too closely." R. 146-2, PID 6157. Higdon argued that, had Goodwin been "cited and convicted" in the two incidents for a violation of the provision, he would have had his CDL suspended for sixty days. Hardin also sent Goodwin's prior speeding reports to the individuals on the email chain, which indicated that Goodwin had on several earlier occasions exceeded the posted speed limit by at least five miles per hour. Goodwin was not disciplined for the earlier speeding reports, and they were not listed as a reason for his termination.

Ultimately, Higdon recommended holding a meeting with Goodwin to obtain his statement on the two incidents, then to put Goodwin on unpaid leave "pending further review by all parties." R. 146-2, PID 6216. Higdon also said that Goodwin had "behavioral issues" in the past, without

---

[3] To avoid confusion, we will refer to Daniel Newcomb and Jack Newcomb by their first names.

explaining what they were, and suggested that the company avoid disciplining Goodwin in person because he may be "unstable or may be violent." *Id.* at 6218. On October 3, 2019, Daniel and Higdon met with Goodwin to discuss the incidents. Goodwin denied breaking any rules but was suspended without pay.

On October 7, 2019, Higdon asked Nancye Combs, a risk-management consultant, to review the customer complaint from September 27 and the September 29 surveillance video. In consultation with Combs, Daniel and Higdon concluded that Goodwin's "conduct constituted an unacceptable safety and liability concern" because he had "operat[ed] a Newcomb Oil vehicle in a reckless, careless, and dangerous manner on September 26, 2019, and September 29, 2019." R. 146-2, PID 6159.

Newcomb Oil terminated Goodwin's employment on October 8, 2019. The termination letter stated that the reason for Goodwin's dismissal was his allegedly "aggressive" and "careless use of a company tanker" during the September 26 and 29 driving incidents.[4] R. 143-8, PID 5967.

### C. Procedural History

Goodwin initiated this action against Newcomb Oil, raising federal and state claims of race-based discrimination under Title VII of the Civil Rights Act of 1964 and the Kentucky Civil Rights Act ("KCRA"). Following discovery, Newcomb Oil moved for summary judgment, arguing that there was no disputed issue of material fact that Goodwin's employment was terminated due to his performance, not his race. The district court agreed, concluding that Goodwin could not make out a prima facie case of discrimination because there was a "differentiating circumstance" separating him from any allegedly similarly situated Caucasian

---

[4] The termination letter erroneously stated that the second incident occurred on October 1. Newcomb Oil clarified that the date on the letter was an error, and that it was referring to the September 29 incident.

employees. R. 159, PID 7086–87. The district court also determined that, even if Goodwin could raise a prima facie claim, Goodwin could not show that the reason for his termination was pretextual.

Goodwin appeals the district court's grant of summary judgment, arguing that there is a genuine issue of material fact regarding the true reason for his termination.

## II. Standard of Review

We review the district court's grant of summary judgment de novo. *Lefevers v. GAF Fiberglass Corp.*, 667 F.3d 721, 723 (6th Cir. 2012). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Saunders v. Ford Motor Co.*, 879 F.3d 742, 748 (6th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). As the movant, Newcomb Oil bears the burden of demonstrating the absence of a genuine dispute of material fact. *Id.* Consequently, we review the evidence in the light most favorable to Goodwin and make all reasonable inferences in his favor. *Lefevers*, 667 F.3d at 723. Where video evidence is available at the summary judgment stage and "blatantly contradict[s]" one party's version of events, "so that no reasonable jury could believe it," a court views the facts in the "light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 380–81 (2007).

## III. Race-Based Discrimination

Title VII makes it unlawful for an employer "to discharge . . . or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C.A. § 2000e-2(a)(1). To defeat summary judgment, a plaintiff must present sufficient evidence for a reasonable jury to conclude, by a

preponderance of the evidence, that race was a "motivating factor" for the adverse employment action. *Desert Palace, Inc. v. Costa*, 539 U.S. 90, 101–02 (2003).[5]

A plaintiff can make this showing by presenting either direct or circumstantial evidence of discrimination. *Id.* Because Goodwin relies solely on circumstantial evidence, we use the *McDonnell-Douglas* burden-shifting framework to assess his claim. *See White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The *McDonnell-Douglas* test requires a plaintiff to first establish a prima facie case of discrimination. If Goodwin successfully establishes a prima facie case of discrimination, the burden shifts to Newcomb Oil to offer a legitimate, non-discriminatory reason for the termination. *White*, 533 F.3d at 391. Should Newcomb Oil meet this burden, the burden shifts back to Goodwin to show that the proffered reason for termination was not the true reason, but merely a pretext for discrimination. *Id.* at 391–92.

## A. Prima Facie Case

The burden of establishing a prima facie case of disparate treatment "is not onerous." *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981). Generally, a plaintiff makes a prima facie case by showing that (1) he is a member of a protected class, (2) he was qualified for the job, (3) he suffered an adverse employment decision, and (4) he was replaced by or treated differently than a similarly situated employee outside the protected class. *White*, 533 F.3d at 391.[6]

---

[5] Because the KCRA's language "mirrors" Title VII, we use the same standards to assess Goodwin's state-based discrimination claim as we do for his federal-law claim. *Smith v. Leggett Wire Co.*, 220 F.3d 752, 758 (6th Cir. 2000); *see also* Ky. Rev. Stat. § 344.040.

[6] The first step of the McDonnell Douglas analysis is "not intended to be an inflexible rule" because "the prima facie proof required from [a plaintiff] is not necessarily applicable in every respect to differing factual situations." *Furnco Const. Corp. v. Waters*, 438 U.S. 567, 575–76 (1978) (quoting *McDonnell Douglas*, 411 U.S. at 802 n.13). For example, in cases where there is "other circumstantial or statistical evidence supporting an inference of discrimination," a plaintiff may not need to show that comparators are similarly situated in all respects. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998). Because the parties use the four-part prima facie framework, we constrain our analysis here to these four factors.

The first and third elements of the prima facie case are not in dispute: Goodwin is an African American man whose employment was terminated. On appeal, Newcomb Oil also does not contest that Goodwin was a qualified employee.[7] Thus, the parties only contest the fourth element: Whether Goodwin was treated differently than a similarly situated employee of a different race.

### 1. Similarly Situated Standard

To be similarly situated, Goodwin does not need to demonstrate an "exact correlation" with an employee receiving more favorable treatment. *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998). But he must show that the comparator is similar in "all of the *relevant* aspects." *Id.* (quoting *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994) (alteration in original)). In a disparate-discipline claim, the relevant factors generally include showing that the employees (1) "dealt with the same supervisor[s]," (2) were "subject to the same standards," and (3) "engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." *Id.* (quoting *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 583 (6th Cir. 1992)). For the third factor, a plaintiff must show that the comparators engaged in acts of "comparable seriousness," but not necessarily identical conduct. *Tennial v. United Parcel Serv., Inc.*, 840 F.3d 292, 303 (6th Cir. 2016).

In the past, we have cautioned against "applying an exceedingly narrow reading" of the *Mitchell* factors. *Ercegovich*, 154 F.3d at 352; *see also Martin v. Toledo Cariology Consultants*, 548 F.3d 405, 412 (6th Cir. 2008) (rejecting the district court's application of the similarly situated

---

[7] At the district court, Newcomb Oil argued that Goodwin was not qualified for his position. However, Newcomb Oil did not contest the qualification element "for purposes of appeal." Appellee's Br. 23 n.18.

standard because it was "overly narrow and restrictive"). We look at the factors "relevant to [each] factual context, as opposed to a requirement that a plaintiff demonstrate similarity in all respects." *Strickland v. City of Detroit*, 995 F.3d 495, 513 (6th Cir. 2021) (quoting *Jackson v. FedEx Corp. Servs.*, 518 F.3d 388, 394 (6th Cir. 2008)).[8] The key question is whether any differences between two purportedly similarly situated employees "were in fact relevant to the [employer's] disciplinary decisions." *Strickland*, 995 F.3d at 513. When reasonable minds can differ on this factual question, summary judgment is not appropriate. *See id.*; *see also Bledsoe v. Tenn. Valley Auth. Bd. of Dir.*, 42 F.4th 568, 586 (6th Cir. 2022) ("Whether the comparison between similarly situated individuals is sufficiently relevant is itself a jury question.").

## 2. Alleged Comparators

Goodwin alleges there are three similarly situated white employees who were not fired for acts that were at least as serious or dangerous as his alleged misconduct.

*Robert Mineau*, a driver employed by Newcomb Oil with "multiple" alleged disciplinary notices, rear-ended another commercial vehicle in April 2019. Appellant's Br. 5. The truck was damaged so badly that it would be "out of commission for a while." R. 143-10, PID 5984. Newcomb Oil's investigation consisted only of reading the police report of the incident, which did not make a finding of fault, and it did not hire a risk-management consultant to conduct an assessment. Mineau was not disciplined for the incident.

*Joseph W. ("Bill") Adams*, a former Newcomb Oil employee, was issued only a written reprimand after he was caught smoking in his truck. Because Adams's job involved transporting highly flammable substances, smoking inside the truck was highly dangerous and violated federal

---

[8] For example, we have noted that an employee occupying a "unique" position can make out a prima facie case of discrimination even if no comparator shares the same job duties. *Ercegovich*, 154 F.3d at 353.

law. 49 C.F.R. § 397.13 (prohibiting smoking within 25 feet of a vehicle containing flammable material). According to Goodwin's deposition testimony, in July 2021, after this suit was initiated, he randomly saw Adams smoking while driving a tanker for a second time and took screenshots and a video. The photo evidence at the deposition includes a photo of a hand with what Goodwin claims is a cigarette.[9] Newcomb Oil investigated Adams, which consisted of checking Adam's truck over a three-week period for the "smell of smoke or other evidence." R. 146-2, PID 6233**.** Newcomb Oil claims it found no evidence that Adams had been smoking. Adams's employment was not terminated for either incident.

*Rebecca Clark*, another former Newcomb Oil employee who resigned voluntarily, was not terminated despite numerous disciplinary notices and allegedly reckless behavior. Notably, Clark faced no discipline after she hit a pole with her truck at one of Newcomb Oil's gas stations, damaging her employer's vehicle and property.

### 3. Differentiating Factors

Goodwin argues that Adam, Clark, and Mineau were similarly situated to him because their acts were of "comparable seriousness." *See Tennial*, 840 F.3d at 303. Newcomb Oil disagrees, arguing that none of the alleged comparators are similarly situated because, unlike Goodwin, no other employee "engaged in two incidents of aggressive or careless driving in a Newcomb Oil tanker within three days, or a similar time period." Appellee's Br. 29. Essentially, Newcomb Oil contends that the frequency of Goodwin's alleged violations is a relevant factor distinguishing Goodwin from any other employee.

---

[9] Whether Goodwin indeed saw Adams and whether Adams was in fact smoking a second time will be questions for the jury.

Although Newcomb Oil's argument is a reasonable one, it does not clear the bar for summary judgment. *See Strickland*, 995 F.3d at 513. Here, when viewing the facts in the light most favorable to Goodwin, a reasonable jury could determine that Goodwin's incidents were not sufficiently numerous to distinguish the severity of his conduct from that of his comparators. *See Bledsoe*, 42 F.4th at 586. (holding that summary judgment was inappropriate where reasonable jurors could disagree about whether a distinction between two employees was relevant to the comparator inquiry); *see also Jackson v. VHS Detroit Receiving Hosp., Inc.*, 814 F.3d 769, 783 (6th Cir. 2016) (holding that a jury could conclude that two employees were similarly situated where they both "violated well-established rules intended to prevent injury," even though the actual violations were different).

Newcomb Oil also argues that Goodwin's conduct was distinguishable from his comparators in other ways. Specifically, Newcomb Oil argues that Adams and Goodwin were distinguishable because (1) Adams admitted to his smoking infraction but Goodwin denied any wrongdoing, (2) Adams's second smoking infraction was not officially confirmed after Newcomb Oil's investigation, but Goodwin's driving was caught on video, (3) Adams's violations were "non-driving," unlike Goodwin's, and (4) Adams had been working at Newcomb Oil significantly longer than Goodwin had.

However, a jury might reasonably doubt the existence or relevance of these distinctions. First, Goodwin appears to have admitted to his infraction: He sent a text to Jack apologizing for his "bad judgement" in making a turn that his employer believed was careless.[10] R. 146-4, PID 6360–61. Second, Goodwin alleges that he has a video and screenshots capturing Adams's

---

[10] Goodwin later suggested in a deposition that he sent that text because he was "try[ing] to keep [his] job" and did not actually believe he exercised bad judgment. R. 146-4, PID 6360–61.

smoking infraction.  R. 146-12, PID 6792.  Third and fourth, a reasonable jury could find that the "non-driving" nature of Adams's violation and his longer tenure at the company are irrelevant distinctions. In other words, a jury might doubt that a longtime employee smoking in a truck filled with flammable materials is any less of a "safety and liability concern" than Goodwin's alleged violations. Appellee's Br. 35.

Thus, when considering the facts in Goodwin's favor, a reasonable jury could determine that Adams was similarly situated to Goodwin.  That is, a jury could reasonably conclude that Adams's two smoking incidents were at least as "reckless, careless, and dangerous" as Goodwin's incidents.  R 146-2, PID 6159.  Accordingly, Goodwin has made out a prima facie case of race-based discrimination.[11]

### B.  Pretext

Newcomb Oil has provided a legitimate, nondiscriminatory reason for terminating Goodwin's employment.  According to Newcomb Oil, Goodwin was terminated because his "aggressive or careless use of a company tanker" in two incidents over the span of three days "constituted an unacceptable safety and liability concern and violated Newcomb Oil's policies." R. 157-6, PID 7038; R. 146-2, PID 6159.

The burden now shifts back to Goodwin to show pretext.  To do so, Goodwin must "produce sufficient evidence from which a jury could reasonably reject [Newcomb Oil's] explanation of why it fired [him]."  *Miles v. S. Cent. Hum. Res. Agency, Inc*., 946 F.3d 883, 888 (6th Cir. 2020) (quoting *Chen v. Dow Chem. Co*., 580 F.3d 394, 400 (6th Cir. 2009)).  "This burden is not heavy" because "summary judgment is warranted only if no reasonable juror could conclude

---

[11] Because Adams is a valid comparator for this step of the analysis, we need not resolve whether Clark and Mineau are also similarly situated to Goodwin.

that the employer's offered reason was pretextual." *Strickland*, 995 F.3d at 512 (quoting *George v. Youngstown State Univ.*, 966 F.3d 446, 462 (6th Cir. 2020)).

A plaintiff typically shows pretext in one of three ways—by demonstrating that the proffered reasons (1) "had no basis in fact," (2) "did not actually motivate the employer's action," or (3) "were insufficient to motivate the employer's action." *Id.* (quoting *Chen*, 580 F.3d at 400).[12] To defeat summary judgment, Goodwin must present evidence of pretext that is sufficient to "rebut, but not to disprove, the defendant's proffered rationale." *Briggs v. Univ. of Cincinnati*, 11 F.4th 498, 513 (6th Cir. 2021) (quoting *Griffin v. Finkbeiner*, 689 F.3d 584, 593 (6th Cir. 2012)). We do not view evidence in each of these categories in isolation. *See Chen*, 580 F.3d at 400 n.4. Rather, we ask whether the evidence of pretext, when considered as a whole, is strong enough to "cast[] doubt" on the employer's explanation. *Id.* Summary judgment is improper if the plaintiff "has produced evidence from which a jury could reasonably doubt the employer's explanation." *Id.*

Goodwin can show pretext by introducing evidence that his alleged conduct was insufficient to warrant termination.[13] *Seeger v. Cincinnati Bell Tel. Co.*, 681 F.3d 274, 285. Usually, evidence in this category consists of showing that other employees, particularly outside of the protected class, were not terminated even though they engaged in "acts of comparable seriousness." *Tennial*, 840 F.3d at 303. Evidence in this category overlaps in large part with the fourth element of a prima facie discrimination claim. At the pretext stage, however, "the factual inquiry proceeds to a new level of specificity," *Jackson*, 814 F.3d at 780 (quoting *Burdine*, 450

---

[12] These categories are not the only ways to establish pretext, but they are a "convenient way of marshaling evidence and focusing it on the ultimate inquiry: 'did the employer fire the employee for the stated reason or not?'" *Miles*, 946 F.3d at 888 (quoting *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530 (6th Cir. 2012)).

[13] Although Goodwin also presents arguments to undermine the asserted factual basis for his termination, we need not discuss them because Goodwin has presented sufficient comparator evidence to warrant reversal. We note, however, that reasonable jurors could interpret the video of the September 29 incident in more than one way.

U.S. at 255), and we "change . . . the rigor with which we evaluate [Goodwin's] similarity to [his] comparators," *id.*

Examining the comparison to Adams with a stronger lens, our analysis from the prima facie analysis still holds. When considering the facts in the light most favorable to Goodwin, a jury could reasonably conclude that Adams was treated more favorably for infractions of comparable or even worse severity. *Id.* at 782. Thus, we leave it to the jury to resolve whether the "likelihood and relative severity" of Goodwin's alleged violations "justified differential discipline." *Id.* at 781.

### 3. Material Issue of Fact

When considering the pretext evidence as a whole and making all reasonable inferences in Goodwin's favor, a reasonable jury could conclude that there is sufficient evidence to support an inference of discrimination. *Chen*, 580 F.3d at 400 n.4. As a result, Newcomb Oil is not entitled to summary judgment.[14] *See id.*

### IV. Conclusion

For the foregoing reasons, we REVERSE the district court's grant of summary judgment to Newcomb Oil and REMAND for further proceedings consistent with this opinion.

---

[14] Newcomb Oil lastly argues that we should affirm due to the "same-actor inference"—because it terminated Goodwin's employment only ten months after hiring him. *See* Appellee's Br. 47 ("[W]here the hirer and firer are the same individual and the termination of employment occurs within a relatively short time span following the hiring, a strong inference exists that discrimination was not a determining factor for the adverse action taken by the employer." (quoting *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 571 (6th Cir. 2003))).

However, the same-actor inference is not mandatory, and our circuit has agreed with others that have "minimized the importance" of the inference when considering a motion for summary judgment. *Id.* at 573. As a result, where an "employee has otherwise raised a genuine issue of material fact," like Goodwin does here, the same-actor inference is "insufficient to warrant summary judgment." *Id.* at 573–74. We also note that the same-actor inference can only apply where the employee was "hired and fired by the same *individual*." *Wexler*, 317 F.3d at 573 (emphasis added). Because Newcomb Oil has not introduced any evidence that the same *individual* made the decision to both hire and terminate Goodwin, the same-actor inference would not apply anyway.